HOFFMAN MANAGEMENT CORPORATION, Lewis A. Dysart, Frank W. Taylor, Roger W. Penner, Howard D. Lay, Alex M. Lewandowski, Robert W. Cotter, Patrick K. McMonigle, and Charles F. Marvine, Jr., Respondents–Appellants,

v.

S.L.C. OF NORTH AMERICA, INC., Appellant–Respondent.

No. WD 42324.

Missouri Court of Appeals, Western District.

Nov. 13, 1990.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 2, 1991.

James C. Morrow, Daniel T. DeFeo, James P. Barton, Jr., Kansas City, for S.L.C of North America, Inc.

Larry W. Joye of Morrison, Hecker, Curtis, Kuder & Parrish, Howard D. Lay and Janet I. Blauvelt of Dysart Taylor, Kansas

City, Penner Lay & Lewandowski, for Hoffman Mgmt., et al.

Before LOWENSTEIN, P.J., and SHANGLER and MANFORD, JJ.

MANFORD, Judge.

This is a consolidated appeal. Hoffman Management Corporation, et al. (hereinafter HMC) cross-appeals from the trial court's declaratory judgment finding that a telephone system was owned by S.L.C. of North America, Inc. (hereinafter S.L.C.) and appeals from the trial court's verdict in favor of S.L.C. for conversion of that telephone system. S.L.C. appeals from the trial court's order, remitting the amount of the award from $45,000.00 to $19,763.88. The trial court's declaratory judgment ruling is affirmed. This court also affirms the jury's verdict and remands this cause with directions to set aside the order of remittitur and enter judgment for S.L.C. for the verdict sum of $45,000.00, plus prejudgment interest.

Cross-appellants, HMC, et al., present five points on appeal which, in summary, charge that the trial court erred: (1) in its findings of fact and conclusions of law for declaratory judgment in concluding that S.L.C. was the owner of the telephone system because the telephone system was a fixture and not, as the court concluded, personalty, and, therefore, ownership passed to HMC as part of the foreclosure sale because HMC was a bona fide purchaser for value without notice of S.L.C.'s unperfected security interest; (2) in finding the telephone system to be personalty but, even if the telephone system was personalty, the trial court erred in making the conclusion of law that S.L.C. was the owner of the telephone system because it improperly concluded that the foreclosure sale included only real property and, therefore, that HMC did not acquire any interest in personalty as part of the foreclosure sale, in that the deed of trust foreclosed upon granted a security interest in personalty which was foreclosed and to which ownership passed to HMC as part of the foreclosure sale pursuant to § 400.9–501(4), RSMo 1986; (3) in finding the telephone

system to be personalty, but, even if the phone system is personalty, the trial court erred in making the conclusion of law that S.L.C. was the owner of the telephone and that S.L.C. had not abandoned the telephone system; (4) in giving Instruction No. 7, because it instructed the jury as to an improper measure of damages in that it allowed the jury to compensate S.L.C. for loss of use in addition to depreciation in fair market value which, under the circumstances of this case, resulted in a verdict far in excess of recoverable damages and, further, in that it did not define the point in time at which to determine the value of the telephone system for purposes of determining depreciation in value; and (5) in entering judgment against "the partners" because it improperly ruled that they were parties to the proceedings at trial on S.L.C.'s counterclaim for conversion in that S.L.C.'s amended counterclaim did not assert claims against "the partners" and was not served on them.

Appellant S.L.C. presents one point on appeal, which charges the trial court erred in entering a remittitur order because remittitur was not available in Missouri when S.L.C.'s cause of action accrued against HMC.

The central issue involved in this appeal deals with the status of a certain Horizon telephone system. S.L.C. claimed ownership of the telephone system, and HMC filed a Declaratory Judgment action as a result of the ownership dispute. S.L.C. counterclaimed for conversion.

In May, 1986, HMC purchased the 4420 Madison Building in Kansas City, Missouri, through a foreclosure sale. Shortly thereafter, the ownership of the building was transferred to an entity known as the 4420 Madison Avenue Building. The owners of the 4420 Madison Avenue Building, in addition to HMC, were Mr. Lewis A. Dysart, Mr. Frank W. Taylor, Jr., Mr. Roger W. Penner, Mr. Howard D. Lay, Mr. Alex M. Lewandowski, Mr. Robert W. Cotter, Mr. Patrick K. McMonigle and Mr. Charles F. Marvine, Jr. At the time that HMC purchased the 4420 Madison Building, Mr. Charles Hoffman, Jr., the president of

HMC, understood that he was purchasing the interests of an entity known as First United Partners 9. The description of the property purchased as contained in the Deed of Trust was a typical, standard description of real property.

Prior to the foreclosure sale in May, 1986, First United Partners 9 filed for bankruptcy protection under Chapter 11 of the United States Bankruptcy Code. At that time, World Savings held the First Deed of Trust on the 4420 Madison Building. In mid-April, 1986, the Bankruptcy Court approved World Savings foreclosure on its Deed of Trust, and an irrevocable trust known as the Sexton Family Trust purchased World Savings' Deed of Trust on the 4420 Madison Building. Mr. Ronald Sexton is an individual who is affiliated with the Sexton Family Trust and acted in this matter on behalf of the trust. As a result of the purchase by the Sexton Family Trust of World Savings' Deed of Trust, the Sexton Family Trust conducted the foreclosure sale at which HMC purchased the interest of First United Partners 9.

In regards to the telephone system in question, on December 30, 1983, Faddis Leasing Corporation leased a Horizon Telephone System to Charter Properties, Ltd., located in the 4420 Madison Building, Suite 106, Kansas City, Missouri. The lease provides that it is for a four-year term, at a rental rate of $991.00 per month, and that the telephone system was always to remain the personal property of Faddis Leasing Corporation. Charter Properties defaulted on the lease for the phone system. Faddis Leasing Corporation then terminated the lease with Charter Properties, sending notice dated April 25, 1986 to Sam Daily, the personal guarantor.

When First United Partners 9 filed bankruptcy, Faddis Leasing Company filed a Proof of Claim. Faddis Leasing Company had some concern in terminating the telephone lease or in recovering the telephone system in that it was located in a building affected by bankruptcy.

By its order of April 21, 1986, the Bankruptcy Court allowed Faddis Leasing Company to remove the telephone system from the building. Faddis Leasing, having terminated its lease with Charter Properties, Ltd., sold the system to S.L.C. on April 25, 1986. Mr. Sexton, acting now in the capacity of president of S.L.C., paid $5,500.00 for the phone system on behalf of S.L.C. on April 29, 1986. Due to the fact that fewer headsets came with the phone system than what Mr. Sexton paid for, Faddis Leasing Co. refunded S.L.C. $500.00, bringing the total purchase price of the Horizon system of $5,000.00.

After purchasing the system, S.L.C. did not remove it from the 4420 Madison Building as Mr. Sexton was hoping to purchase the building at the foreclosure sale. He was unsuccessful at this attempt.

S.L.C. is in the business of leasing equipment. At the time Mr. Sexton of S.L.C. purchased the phone system in April of 1986, he testified it had a value of $20,000.00 and a lease value of $1,000.00 per month. When originally purchased in 1984, the telephone system sold for $31,000.00, a fair and reasonable purchase price. At the time Mr. Sexton purchased the system, only ten of the original 18 headsets could be found, thereby decreasing the original price in 1984 to approximately $28,500.00.

In May, 1986, the foreclosure sale occurred. Prior to this sale, Mr. Sexton of S.L.C. had made no attempts to remove the phone system from the premises. HMC was the successful bidder at the foreclosure sale. Shortly after the sale, Mr. Sexton had a conversation with Charles Hoffman of HMC concerning the system, stating that S.L.C. owned the telephone system. Subsequent to the foreclosure sale, HMC and "the partners" of the 4420 Madison Building would not turn over the system to S.L.C., asserting that the system was a fixture under the Uniform Commercial Code, and that ownership of the system passed to them as a result of the foreclosure sale.

Cross-appellants (at the time in the posture of plaintiffs) filed their Petition for Declaratory Judgment to Quiet Title. S.L.C. then counterclaimed against HMC, seeking damages and return of the telephone system. A trial on the issue of

declaratory judgment ensued on November 8, 1988. At that time, plaintiff HMC's counsel amended their petition to include the names of "the partners" in the 4420 Madison Avenue Building partnership. Defense counsel then orally amended their counterclaim to include "the partners". The trial was bifurcated. The first trial was on the declaratory judgment issue and the second, on defendants' counterclaim for conversion.

At the trial for declaratory judgment, evidence was heard regarding the phone system. The system was installed and utilized in the "Executive Suite" area located on the first floor of the 4420 Madison Avenue Building. It consisted of the central processing unit of the telephone system, which was on wheels; included the board containing the wiring configuration, which was screwed and bolted into the wall; the wiring running to the individual offices, which was dropped through the ceiling; and headsets. It could easily be removed from the Executive Suite with minimal damage to the building.

As a result of the initial non-jury trial, the trial court issued its Findings of Fact and Conclusions of Law on November 18, 1988, concluding that First United Partners 9, the owner of the building, waived any possessory interest in the telephone system by virtue of the Bankruptcy Order dated April 16, 1986; that the telephone system was not a fixture, but was personalty; that it was not part of the foreclosure sale, and therefore, HMC did not acquire any interest in the system. The trial court found defendant S.L.C. to be the legal owner of the telephone system.

At the jury trial held May 1 and 2, 1989, appellant S.L.C. (originally denoted as defendant, and, at time of the jury trial, posturing as plaintiff) presented evidence on its conversion claim. Expert testimony was heard from James Neese, President of Commercial Capitol Corporation. Mr. Neese stated that based on 1986 rates, his opinion was that the system would have leased for between $550.00 and $600.00 per month. Mr. Sexton then testified that when HMC would not return the phone system, he had to lease a system for $1,000.00 per month. This system was absolutely identical to the system he had purchased from Faddis Leasing Company. The evidence showed that HMC held the phone system between twenty-nine to thirty-two months. The jury was instructed that it could award an amount based on lost market value and loss of use. The jury found in favor of S.L.C., awarding $45,000.00 in damages.

On July 31, 1989, the trial court issued its Order of Remittitur, remitting the award to $16,287.00. Judge Fraze then awarded S.L.C. prejudgment interest in the amount of $3,476.00, bringing the judgment to $19,763.88. S.L.C. filed Notice of Appeal from the trial court's Order of Remittitur on August 9, 1989. HMC cross-appeals from the trial court's Findings of Fact and Conclusions of Law, as well as the judgment as modified by the Order of Remittitur.

On review, due deference is given to the trial court's findings and conclusions unless the evidence is palpably insufficient to support them. D.M.S. v. P.E.S., 526 S.W.2d 361, 362 (Mo.App.1975). This court first takes up HMC's cross-appeal. Point (1) argues that the telephone system was a fixture under Missouri law, ownership of which passed to HMC as part of the foreclosure sale because HMC was a bona fide purchaser for value without notice of S.L.C.'s unperfected security interest, and not, as the trial court concluded, personalty.

A fixture is "an article in the nature of personal property which has been so annexed to the realty that it is regarded as part of the land and partakes of legal incidence of the free hold and belongs to the person owning the land." Bastas v. McCurdy, 266 S.W.2d 49, 51 (Mo.App. 1954). The test for determining whether property has become a fixture is three-fold, consisting of: (1) the annexation to the realty; (2) the adaptation to the use to which the realty is devoted; and (3) the intent that the object become a permanent accession to the land. Id. Whether or not an article is a fixture depends upon the

facts and circumstances of a particular case. *Id.*

Cross-appellants contend the trial court incorrectly applied the test in determining whether the telephone system was a fixture or personalty, alleging that the trial court failed to consider the factors of intent and annexation.

■ In reviewing the trial court's Findings of Fact and Conclusions of Law in its entirety, it is clear that all three elements were given due consideration in determining that the telephone system was a fixture and not personalty. Further, the trial court discussed at length those factors felt to be controlling, those of intent and annexation. Intent of the annexor at the time of the annexation controls as to whether something is to be considered a fixture. *Lee's Mobile Homes, Inc. v. Grogan,* 621 S.W.2d 317, 318 (Mo.App.1981). The trial court found it was the intent of the original parties to the transactions that the telephone system remain personalty.

■ The trial court properly found the telephone system to be personalty and not a fixture. In considering the element of annexation, the trial court ruled that the telephone system could be removed with minimal damage. The evidence supports this finding. The lines to each phone were run along a drop ceiling and down moveable walls in an area of the building known as the Executive Suite and the central processing unit was on wheels.

Under the second part of the fixture test, adaptation, HMC argues that the phone system was especially adapted to the Executive Suite concept within the 4420 Madison Avenue Building. The adaptation element refers to the characteristics of fitness or suitability for the building or premises in question. *State ex rel. State Hwy. Com'n v. Wally Hutter Oil Co.,* 467 S.W.2d 279, 282 (Mo.App.1971). The chattel should be peculiarly adapted to the real property. *Id.* The telephone system was not so peculiarly adapted to the Executive Suite concept that it must be considered a fixture. Thus, the trial court was correct in its finding that the phone system was a fixture.

Cross-appellants further argue that the intent of the original parties was for the phone system to be a fixture. The intent of the parties at the time the phone system was annexed was stated in the original equipment lease:

TITLE—The title to equipment (phone system) shall at all times remain in lessor, and lessee, at its own cost and expense, shall protect and defend the title of lessor. The equipment shall remain personal property irrespective of its use or manner of attachment to realty, and lessee agrees to take such action at its expense as may be necessary to prevent any third party from acquiring any interest in the equipment as a result of its attachment to realty.

This language is an unequivocal manifestation of the intent of the original parties that the phone system remain personal property and that it should not be a fixture.

From the foregoing, it is clear the trial court was correct in finding the phone system to be personalty. After applying the law to the relevant facts, the trial court reached the correct decision. The trial court used the correct test to determine if the phone system was a fixture. Cross-appellants' first point is ruled against them.

■ Next, this court examines cross-appellants' argument that even if the telephone system was personalty, the trial court erred in finding the system to belong to S.L.C. in that the trial court improperly concluded that the foreclosure sale included only real property and, therefore, HMC did not acquire any interest in the personalty as part of the foreclosure sale, in that the Deed of Trust foreclosed upon granted a security interest in personalty which was foreclosed and to which ownership passed to HMC as part of the foreclosure sale pursuant to § 400.9–501(4), RSMo 1986.

The Deed of Trust provides, in pertinent part, that World Savings would have a security interest in:

[A]ll machinery, fixtures, equipment, apparatus, construction materials and other articles of personal property owned by the Grantor and now or hereafter

affixed to, placed upon or used in connection with the Mortgaged Property and Improvements, including but not limited to all pipes for water and sewer lines, cables, electrical wire for power systems and construction materials.

\* \* \* \* \* \*

[A]ll goods, equipment, furnishings, fixtures, furniture, chattels, materials and personal property of whatever nature owned by the Grantor ... now or hereafter attached or affixed to or used in and about any Improvements now erected or hereafter to be erected on the Mortgaged Property.

The owner of the building and the grantor under the Deed of Trust was First United Partners 9. Pursuant to the specific language of the Deed of Trust, it only affected property owned by the grantor. Since First United Partners 9 never had any ownership interest in the telephone system, it could not have been covered by the Deed of Trust. Foreclosure of the Deed of Trust affected only the realty and some personalty owned by First United Partners 9. Foreclosure did not affect the personalty owned by S.L.C., previously owned by Faddis Leasing Company. The phone system was never owned by First United Partners 9.

The trial court correctly relied on the language of the Notice of Trustee Sale in ruling that personalty was not to be included in the foreclosure sale. The Notice of Sale states:

For default in payment of the debt secured by the Deed of Trust executed by FIRST UNITED PARTNERS 9, a Missouri limited partnership, grantor, dated July 23, 1984, recorded July 26, 1984, as Document No. K–622371, in Book K–1334, beginning at Page 1772, in the office of the Director of Records for Jackson County, Missouri, at Kansas City, the undersigned Successor Trustee, at the request of the legal holder of the debt, who has elected to declare the entire debt due and payable, will on Wednesday, May 28, 1986, between the hours of 9:00 am. and 5:00 pm., at the north front door of the Jackson County Circuit Courthouse in Jackson County at Kansas City, sell at public vendue [sic] to the highest bidder for cash the real property described in said Deed of Trust, to-wit:

Lots 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45 and 46, Block 7, BUNKER HILL, a subdivision in Kansas City, Jackson County, Missouri,

to satisfy said debt and costs.

Under § 443.320, RSMo 1986, which deals with the notice required for foreclosure of a Deed of Trust, a "description of the property to be sold" should be given. There is no instructive case law as to the meaning of the phrase provided by the statute. The primary rule of statutory construction is to ascertain the intent of the legislature from the language used, to give effect to that intent if possible, and to consider words used in their plain and ordinary meaning. *Wolff Shoe Co. v. Director of Revenue*, 762 S.W.2d 29, 31 (Mo. banc 1988).

The Notice of Trustee's Sale provided that the Successor Trustee would sell "to the highest bidder for cash the *real property* described in said deed of Trust, ..." (emphasis added). The Notice of Trustee's Sale clearly and unequivocally stated that it was the sale of real property, rather than personalty, and that it was for default on the Deed of Trust executed by First United Partners 9. Accordingly, the only property being sold was the real property owned by First United Partners 9.

Since First United Partners 9 never owned the telephone system, World Savings never had a security interest in the phone system. Therefore, the holder of the World Savings Deed of Trust did not have the option to foreclose a security interest it never had. In summary, the telephone system was personalty belonging not to the grantor of the Deed of Trust, but to Faddis Leasing Company, then to S.L.C. As such, the Deed of Trust foreclosure did not encompass personal property of anyone other than the grantor. The trial court properly concluded the phone system to be the personal property of S.L.C., not subject

to sale at foreclosure. Cross-appellants' point (2) is ruled against them.

■ Cross-appellants next argue that S.L.C. abandoned the telephone system by failing to remove it from the building prior to the foreclosure sale. HMC contends the trial court, in concluding S.L.C. owned the property, did not consider evidence from which it should have concluded that S.L.C. had abandoned the phone system as a matter of law.

■ Abandonment consists of two elements: (1) an intent to abandon, and (2) the external act by which the intention is carried into effect. *Linscomb v. Goodyear Tire and Rubber Co.*, 199 F.2d 431, 435 (8th Cir.1952). Both elements must be present or there can be no abandonment. *Id.* at 439. Abandonment must be proven by the party relying on it and ordinarily, it will not be presumed if the conduct of the owner can be explained consistently with a continued claim. *Id.* The evidence to support the claim of abandonment must be clear, unequivocal and decisive. *Id.*

Here, there is no clear, unequivocal, and decisive evidence pointing to abandonment. S.L.C.'s conduct in not removing the phone system from the premises is consistent with the desire of Mr. Sexton to purchase the 4420 Madison Avenue Building and subsequently lease or use the phone system at that location. Cross-appellants contend that under *Wirth v. Heavey*, 508 S.W.2d 263 (Mo.App.1974), S.L.C. had abandoned the property as a matter of law. In *Wirth*, specific notice was given the debtor that specific personal property would be sold unless it was picked up by a certain date. The debtor did not claim the property or respond in any way. *Wirth* at 267. The *Wirth* court found that these circumstances constituted the requisite "intent plus an act." *Id.* These facts are distinguishable from the case at bar. There is no evidence that S.L.C. failed to remove its property in the presence of specific information that it would lose the property if it did not remove it. S.L.C. never waived its ownership claim to the phone system, and, accordingly, there was no intent on the part of S.L.C. to abandon the property or

any act in furtherance of abandonment. S.L.C. left the phone system on the premises with hope that Mr. Sexton would purchase the building. His action does not evidence any intent to abandon, nor can abandonment be inferred. Thus, the trial court applied the law correctly when it found that S.L.C. had not abandoned the telephone system. Cross-appellants' point (3) is ruled against them.

■ Cross-appellants further argue that the trial court erred in giving Instruction No. 7 because it improperly instructed the jury as to the improper measure of damages for conversion. There is no M.A.I. instruction for conversion of damages. Ordinarily, the measure of damages for conversion is the reasonable market value of the property at the time of conversion. *Lacks v. R. Rowland & Co., Inc.*, 718 S.W.2d 513, 520 (Mo.App.1986). Where property is returned to the owner after the conversion, as in the case at bar, the measure of damages is the difference between the value of the property at the time of the conversion and the value at the time of the return, plus the reasonable value for the loss of use of the property. *Id.*

Instruction No. 7 reads:

If you find in favor of Plaintiff, then you must award Plaintiff such sum as you may find from the evidence to be the difference between the fair market value of the Horizon telephone system before it was held by Defendants and its fair market value after it was returned to Plaintiff's possession, plus such sum as you may find from the evidence will fairly and justly compensate Plaintiff for the loss of use thereof for a reasonable time during the time the Horizon telephone system was in the possession of defendants, but not to exceed a period of time it would take a reasonable person to replace the Horizon telephone system.

Instruction No. 7 is in all respects consistent with Missouri case law concerning conversion damages. Further, the jury's verdict was supported by sufficient evidence as to both fair market value and loss of use damages.

■ Cross-appellants argue that the instruction was in error in that it did not define the point in time at which to determine the value of the telephone system for purposes of determining depreciation in value. Cross-appellants contend that the difference in fair market value must be the difference between the values "at the time of the conversion" and "at the time of the return", citing *Lacks, supra.*

Before reversible error can be predicated on giving of instruction, the complaining party must show that, under all evidence, the instruction was a misdirection to the jury resulting in prejudicial error. *Yoos v. Jewish Hosp. of St. Louis*, 645 S.W.2d 177, 189 (Mo.App.1982). All the instructions are to be read together as a whole, and as being given to and considered by jurors of reasonable intelligence. *Id.* at 190. This court finds no prejudice to cross-appellants by the use of the language "before it was held by defendants and after it was returned."

Testimony presented by S.L.C. was that the fair market value of the telephone system in 1986, which was the time of conversion, was $14,487.00. Cross-appellants' expert testified that its fair market value in 1989, the time of its return, was zero. Comparing these two numbers, as the jury is required to do under the *Lacks, supra*, holding, results in the same fair market value measure of damages as assessed by the jury. The jury's verdict clearly shows that they considered the fair market value of the telephone system to be the difference between the fair market value at the time of conversion ($14,487.00) and its fair market value at the time of return ($0.00), coupled with loss of use value. Accordingly, the trial court did not err in submitting Instruction No. 7 to the jury, as it was proper under Missouri law, and the jury's verdict was supported by sufficient evidence as to both the fair market value and the loss of use damages. Cross-appellants' point (4) is ruled against them.

Cross-appellants' final point states that the trial court erred in ruling that the partners of the 4420 Madison Avenue Building, Lewis A. Dysart, Frank W. Tay-lor, Jr., Roger W. Penner, Howard D. Lay, Alex M. Lewandowski, Robert W. Cotter, Patrick K. McMonigle, and Charles F. Marvine, Jr., ("the partners") were parties to S.L.C.'s counterclaim for conversion.

■ In reviewing a trial court's discretionary ruling, it is presumed that the ruling is correct and the burden of showing abuse of discretion is on appellant. *Anderson v. Robertson*, 402 S.W.2d 589, 593 (Mo.App.1966). Thus, the burden of showing abuse of discretion is on cross-appellants, HMC, et al.

Following is a brief history of the joinder of "the partners". The issue was first raised by Mr. Howard Lay, who was counsel for HMC (then posturing as plaintiffs) at the time of trial for declaratory judgment. Due to S.L.C.'s affirmative defense that HMC was not the real party in interest, Mr. Lay added "the partners" to cure the real party in interest dilemma, representing to the court that he had the authority to add those party plaintiffs. As a consequence of "the partners" being added to the case, defendant S.L.C. requested to assert its counterclaim against all other newly named plaintiffs. This request was granted. Subsequent to the stipulated amendments to the pleadings, cross-appellants moved for a bifurcated trial, which was sustained by the trial court. Thereafter, the first phase of the trial, the declaratory judgment phase, was tried and "the partners" were all plaintiffs and were affected by the trial court's ruling in the initial phase of the trial.

At the second phase of trial, the trial for S.L.C.'s counterclaim of conversion, counsel for HMC, Mr. Benjamin (Mr. Lay withdrew from representation of all party plaintiffs, and was, in fact, a named party as he is one of "the partners".) objected on the grounds that "the partners" were not named in S.L.C.'s counterclaim for conversion.

The trial transcript clearly supports the trial court's ruling that "the partners" were parties to S.L.C.'s counterclaim. It was stipulated to at the beginning of the bifurcated trial that "the partners" were parties to both the action for declaratory

judgment and the counterclaim for conversion. Thus, cross-appellants' fifth and final point is found to be without merit and is ruled against them. All of cross-appellants' points are ruled against them.

This court now turns to the appeal of S.L.C. S.L.C. argues that the trial court erred in entering its order of remittitur in that remittitur was not available to the trial court. This court agrees.

Judge Fraze's order of remittitur reads in pertinent part:

The Court finds that the fair and reasonable amount for Counterclaimant's (S.L.C.) damages are as follows:

1. $14,487.00 (The difference in value of the phone system at the time of conversion to date of return)
2. $1,800.00 (Loss of use—The rental value of the phone system for three months which was a reasonable period of time for S.L.C. to replace said system)
3. $3,476.88 (Prejudgment interest for 32 months at 9%) (May 28, 1986—May 2, 1989).

This court can find no basis in the record for the trial court's assignment of $1,800.00 for loss of use value. There is no evidence on the record to support the trial court's reduction. Further, the trial court had no authority to remit the award.

The Supreme Court abolished the practice of remittitur in *Firestone v. Crown Center Redevelopment Corp.*, 693 S.W.2d 99 (Mo. banc 1985), on June 25, 1985. Approximately two years after *Firestone* was decided, the state legislature enacted § 537.068, RSMo Supp.1987, the Tort Reform Act, again granting the courts the authority to remit a jury's verdict "if, after reviewing the evidence in support of the jury's verdict, the court finds that the jury's verdict is excessive because the amount of the verdict exceeds fair and reasonable compensation for plaintiff's injuries and damages." However, § 537.068 applies only to causes of action accruing after July 1, 1987. Section 537.068, RSMo Supp.1987; *Lane v. Amsted Industries, Inc.*, 779 S.W.2d 754, 755 (Mo.App.1989). Both appellant and cross-appellants/re-

spondents agree that the cause of action accrued post-*Firestone* and pre-Tort Reform, and that the Order of Remittitur dated July 31, 1989 was improper. The trial court acted without authority when it entered its Order of Remittitur.

Cross-appellants, HMC, et al., argue that in certain circumstances, this Court has the authority, notwithstanding *Firestone*, to enter judgment in an amount different from the verdict when the verdict is in excess of the amount pleaded or the verdict is not supported by the evidence. *Jetco Heating and Air Conditioning v. Spizman*, 735 S.W.2d 54, 57 (Mo.App.1987). This court does not find *Jetco* persuasive. The evidence here clearly supports the jury's award of $45,000.00.

The record shows that the value of the telephone system at the time of conversion was $14,487.00. The value of the system, by defendants' own evidence, at the time the system was returned to S.L.C. was $0.00. The difference between the value at the time of conversion and time of return is $14,487.00. The evidence also supports the loss of use value assigned by the jury. S.L.C. was without their phone system for between 29 and 32 months. Mr. Sexton of S.L.C. was forced to go out on the market and lease the same phone system for $1,100.00 per month. The verdict is not excessive and is supported by the evidence. The only remedy available to the trial court would have been to grant a new trial under Rule 78.01. This court cannot, however, find good cause to even support an order for new trial as the jury's verdict is not excessive under the evidence.

Therefore, this court, in line with the ruling of the Supreme Court of Missouri in *Firestone, supra,* affirms the jury's verdict and remands this cause with directions to set aside the order of remittitur and enter judgment for S.L.C. for the verdict sum of $45,000.00, plus prejudgment interest awarded by the trial court on the lost value of the property in the sum of $3,476.88, bringing the final amount due S.L.C. to $48,476.88.

This court further affirms the declaratory judgment of the trial court.

All concur.