Betty ROTHERMICH, Personal Representative of the Estate of Kenneth J. Rothermich, Respondent,

v.

UNION PLANTERS NATIONAL BANK, Appellant.

No. ED 75373.

Missouri Court of Appeals,
Eastern District,
Division Five.

Feb. 8, 2000.

Robert H. Brownlee, Robert W. Phillips, Thompson Coburn, LLP, St. Louis, for appellant.

Edward C. Ahlheim, Ahlheim & Dorsey, St. Charles, for respondent.

*OPINION*

CRAHAN, Judge.

Union Planters National Bank ("Bank") appeals from a judgment entered by the trial court pursuant to stipulated facts submitted by the parties on the issue of whether certain automatic pinsetting machines ("pinspotters") installed at a bowling alley constituted fixtures or personal property. Bank asserts the court misapplied the law when it found that the pinspotters were fixtures secured by the provisions of Kenneth Rothermich's deed of trust and as such, had priority over Bank's UCC personal property security interest. We agree and reverse the judgment of the trial court.

Kenneth Rothermich ("Rothermich")[1] and Herman Toebben owned St. Charles Bowling Lanes, Inc. ("St. Charles Bowl"), a company which owned and operated a bowling alley in St. Charles, Missouri. Rothermich and Herman Toebben operated St. Charles Bowl from the early 1960's, when the building housing the lanes was constructed, through 1987, when the business was ultimately sold.

In January 1972, after St. Charles Bowl had been in business as a bowling alley for several years, St. Charles Bowl entered into a lease agreement with AMF, Inc.

("AMF") for the installation of pinspotters in the building. The pinspotters were manufactured in three pieces and assembled inside the bowling alley. They were placed in the step-down portion of the alley lane that was re-designed to accommodate them, and screwed, bolted and riveted to the concrete floor.

The lease agreement between AMF and St. Charles Bowl, signed by Rothermich in his corporate capacity, provided for a lease term of 12½ years and recited, in part:

> Upon any termination of this agreement, AMF shall immediately have the right to possession of the machines and AMF may enter upon the premises where the machines are located, take possession without previous demand or notice and without legal process, and remove them to the manufacturer's factory or other place of storage.

> \* \* \*

> The machines shall at all times remain the sole and exclusive property of AMF (which reserves the right to assign or encumber the machines) and operator shall have no rights, title or interest to the machines but only the right to use them under this agreement. The machines shall remain personal property and shall not be deemed otherwise by reason of becoming attached to the premises.

In July 1984, with the original lease term nearing its expiration, Rothermich and Herman Toebben executed an amendment to the lease agreement extending the lease term through December 1989.

In May 1987, Herman Toebben's son, Kevin Toebben, along with several others, formed Weber's St. Charles Lanes, Inc. ("Weber's Lanes"), for the purpose of purchasing St. Charles Bowl. The purchase agreement between St. Charles Bowl and Weber's Lanes was made expressly contin-

---

1. Kenneth Rothermich is deceased. His wife, Betty Rothermich, brought suit as the personal representative of his estate.

gent upon an assignment to Weber's Lanes of the lease agreement, as extended, between St. Charles Bowl and AMF for the use of the pinspotters. The price paid to Rothermich and Herman Toebben for St. Charles Bowl did not include consideration for the pinspotters, as they were considered by all parties involved to be the property of AMF pursuant to the terms of the lease agreement.

As part of the purchase agreement, Rothermich and Herman Toebben agreed to finance part of the purchase price for St. Charles Bowl, with the remainder financed by Boatmen's Bank of O'Fallon ("Boatmen's"). In June 1987, Weber's Lanes executed a promissory note in the amount of $522,500.00 in favor of Herman Toebben, a promissory note in the amount of $327,500.00 in favor of Rothermich, and a promissory note in the amount of $500,-000.00 in favor of Boatmen's. Each promissory note was secured by a deed of trust and recited that it conveyed to the trustee both the real property and "all buildings, fixtures and appurtenances now or hereafter to the same belonging...."

In early 1989, with the extended lease term for the pinspotters nearing expiration, Kevin Toebben, in his capacity as an officer of Weber's Lanes, approached Bank [2] regarding financing the purchase of the pinspotters by Weber's Lanes from AMF. On March 31, 1989, Weber's Lanes, by Kevin Toebben as an officer thereof, executed a promissory note in favor of Bank for the purchase of the pinspotters, and also executed a security agreement granting Bank a security interest in the same. The security agreement provided, in relevant part:

That upon default or at any time thereafter, Secured Party may, without notice, declare all obligations owed hereunder immediately due and payable and shall have all the rights and remedies of a secured party under the Uniform Commercial Code of Missouri, and any other applicable laws. Debtor will, at Secured Party's request, assemble the collateral or make it available to the Secured Party at such place as is designated by the Secured Party, which shall be reasonably convenient.

On April 14, 1989, Bank filed a UCC 1 financing statement with the St. Charles County Recorder of Deeds, setting forth Bank's security interest in the pinspotters. On April 17, 1989, Bank filed a UCC 1 financing statement with the Missouri Secretary of State, again setting forth its security interest.[3]

Thereafter, Weber's Lanes defaulted on its loans. In the fall of 1995, Bank foreclosed on its interest in the pinspotters pursuant to its rights under the security agreement and Boatmen's foreclosed on the real estate pursuant to its deed of trust. Prior to the foreclosure sale, Bank entered into an intercreditor agreement with Boatmen's to resolve their disagreement regarding the status of the pinspotters as fixtures or personal property. Under this agreement, Bank agreed to reimburse Boatmen's from its anticipated sale proceeds of the pinspotters in the event a deficiency resulted from the foreclosure sale by Boatmen's.

After the agreement was signed, Bank sold the pinspotters at the foreclosure sale to Charan Industries, Inc. ("Charan") for $124,000.00. Contractors hired by Charan

---

**2.** Landmark Bank of St. Charles County was succeeded due to merger by Magna Bank National Association, which was in turn, succeeded due to merger by Union Planters National Bank.

**3.** Although apparently unnoticed by Bank, there was also a financing statement dated December 11, 1986, signed by AMF and Manufacturers Hanover, recorded as a fixture filing in the real estate section of the St. Charles County Recorder of Deeds office. This financing statement asserted a security interest in favor of Manufacturers Hanover in any property, whether personal property or fixtures, of AMF located at the premises of St. Charles Bowl. This financing statement was still of record when Bank obtained its personal property UCC financing statement from Weber's Lanes in March of 1989.

removed the pinspotters from the bowling alley premises with no physical or structural damage to the property. Charan subsequently resold the pinspotters to another bowling alley operator outside of the United States.[4]

Thereafter, Betty Rothermich, personal representative of the estate of Kenneth Rothermich, brought a declaratory judgment action against Bank seeking a declaration that the pinspotters sold by Bank were fixtures constituting a part of the real property and thus, subject to her deed of trust which was not satisfied by the Boatmen's foreclosure sale.[5] After Rothermich entered into an agreement with Herman Toebben as to their respective percentages for sharing the potential funds, all parties agreed to submit to the trial court on stipulated facts the issue of whether the pinspotters were fixtures subject to the deeds of trust of Rothermich and Toebben, or personal property subject to the security interest of Bank.

On October 11, 1998, the trial court entered judgment for Rothermich, finding that the pinspotters were fixtures and ordering Bank to pay $124,000.00 plus accrued interest into the registry of the Court. No findings of fact or conclusions of law were requested. Bank appeals from this judgment.

■ Our standard of review is governed by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo.banc 1976). We will sustain the judgment of the trial court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Id.* In a case tried on stipulated facts, the only issue on appeal is whether the court drew the proper legal conclusions from the stipulated facts.

*State Farm Mut. Auto. Ins. Co. v. Sommers*, 954 S.W.2d 18, 19 (Mo.App.1997).

In its first point on appeal, Bank argues the trial court misapplied the law and drew improper legal conclusions from the stipulated facts. Specifically, it argues that the court erred in finding the pinspotters to be fixtures because the three-factor test, as originally discussed in *Bastas v. McCurdy*, 266 S.W.2d 49, 51 (Mo.App.1954), when applied to the agreed upon facts, clearly establishes that the pinspotters were personal property.

■ A fixture is an article in the nature of personal property which has been so annexed to the realty that it is regarded as part of the land and partakes of the legal incidents of the freehold and belongs to the person owning the land. *Bastas* at 51. The test for determining whether property has become a fixture is threefold, consisting of: 1) the annexation to the realty; 2) the adaptation to the use to which the realty is devoted; and 3) the intent that the object become a permanent accession to the land. *Id.; Hoffman Management Corp. v. S.L.C. of North America, Inc.*, 800 S.W.2d 755, 759 (Mo.App.1990). These elements or tests all present questions of fact and are not ordinarily resolvable by law. *Bastas*, 266 S.W.2d at 51. Whether or not an article is a fixture depends upon the facts and circumstances of a particular case. *Id.*

■ Bank contends that the trial court erred in finding the pinspotters were fixtures because at the time of the annexation of the pinspotters to the real estate, all parties intended, as evidenced by the original lease agreement, that the pinspotters were to remain personal property. It further argues that this intention extended beyond the original lease agreement to all

---

**4.** Subsequent to the removal of the pinspotters, the purchaser of the bowling alley real estate at the foreclosure sale purchased and installed replacement pinspotters.

**5.** Her petition also requested a declaration of the priorities of the respective deeds of trust

on the real property. This court affirmed the grant of summary judgment in favor of Boatmen's in *Rothermich v. Weber's St. Charles Lanes, Inc.*, 957 S.W.2d 509 (Mo.App.1997). That appeal did not discuss the present issue.

subsequent transactions and included all subsequent parties as well. We agree.

■■■■ The intent of the parties is generally regarded as the most important element to consider when making the determination as to the classification of an item as it relates to the land. The intent of the annexor at the time of the annexation controls as to whether something is to be considered a fixture. *Lee's Mobile Homes, Inc. v. Grogan,* 621 S.W.2d 317, 318 (Mo. App.1981). When necessary, other tests may be applied in determining this question, but where, as here, the intention of the parties may be determined from their contract, such intention should control, regardless of other tests and rules of law which are applied in determining the question in the absence of the expressed intention of the parties. *Id.; Kolb v. Golden Rule Baking Co.,* 222 Mo.App. 1068, 9 S.W.2d 840, 844 (1928). Although most often applied to conflicts between the purchaser and seller of an item that has become affixed to the land, the same principle has been applied to situations similar to the present case.

In *Hoffman Management Corp.,* the purchaser of a building at a foreclosure sale and the subsequent purchaser of a telephone system that had been previously installed in the premises disputed whether the system constituted personal property or a fixture. 800 S.W.2d at 760. In holding that the telephone system was personal property, the court found that the agreement between the lessor and the original building owner – stating that the telephone system would remain personal property irrespective of its use or attachment to the realty – represented an "unequivocal manifestation" of intent for the item to remain personal property and controlling. *Id.*

In *American Clay Machinery Co. v. Sedalia Brick & Tile Co.,* 174 Mo.App. 485, 160 S.W. 902 (Mo.App.1913), the court considered a similar scenario where a dispute arose between the seller of machinery and the subsequent purchaser of the machin-

ery who had actual notice of the agreement between the seller and the original purchaser wherein the machinery was to remain personal property and be removed if it was not paid for. The court held that under those circumstances, it was not necessary to consider the facts and circumstances attending the sale, the manner of attaching the property to the realty, or the results flowing from its removal therefrom in order to get to the intention of the parties. It held that in determining whether or not machinery attached to realty remained personal property or became realty, the intention of the owner is the *best test;* and, if that is not expressly stated, the adaptability of the machinery to the uses and purposes to be subserved is the next best test. *Id.* at 904. It found that since the subsequent purchaser had actual notice of the express agreement between the original parties and took the property subject to that agreement, the case was to be considered precisely as if it were between the seller and the original purchaser. *Id.* The machinery was found to be personal property as agreed upon by the parties prior to the installation of the equipment on the premises.

In the present case, the undisputed facts also established that all parties intended that the pinspotters would remain personal property subject to the lease agreement with AMF. The original lease agreement, negotiated and signed by Rothermich and Herman Toebben, expressly stated that the pinspotters were to remain personal property and not be "deemed otherwise by reason of becoming attached to the premises." As in *Hoffman Management Corp.,* this language is an unequivocal manifestation of the intent of the original parties that the pinspotters remain personal property.

This same manifestation was present in each of the subsequent transactions and extended to all subsequent parties as well. The characterization of the pinspotters as personal property was affirmed by St. Charles Bowl at the time of the lease

extension with AMF in 1984 and reaffirmed upon the sale of St. Charles Bowl to Weber's Lanes in 1987. The purchase price paid by Weber's Lanes did not include consideration for the pinspotters as the parties agreed they were personal property, and the sale was made expressly contingent upon the assignment of the lease agreement with AMF. Finally, the intent of the parties to classify the pinspotters as personal property was affirmed a third time by Weber's Lanes in its security agreement with Bank upon the purchase of the pinspotters from AMF in 1989. Thus, the record is clear that the pinspotters retained their personal property characterization throughout each of the transactions and was regarded as such by all parties involved.

■ In response, Rothermich argues that the 1986 filing of a security interest by Manufacturers Hanover modified the terms and effect of the lease between AMF and St. Charles Bowl. She also asserts that Webers' Lanes' purchase of the pinspotters extinguished the classification of the pinspotters thereunder. She contends that at that point the pinspotters became fixtures and part of the real estate subject to her deed of trust the same as any other after-acquired property.

We find nothing in the Manufactures Hanover filing that specifically categorizes the pinspotters as fixtures. Although the pinspotters are mentioned, the filing specifically covers both personal property and fixtures. Nor do we believe any agreement between AMF and a third party could properly override the underlying and unequivocal agreement between AMF and the original and successor owners of the real property that the pinspotters would remain personalty. Nor did Weber's Lanes' purchase of the pinspotters evidence any intent to change the character of the pinspotters in view of its contemporaneous agreement with Bank that the pinspotters would remain personal property subject to Bank's security interest.[6]

■ Bank next argues that the trial court erred in finding the pinspotters were fixtures because the factor of physical annexation to the real estate was not met. It asserts that although the pinspotters were screwed, bolted and riveted to the concrete floor, the facts established that they were easily removed without damage to the premises, thereby defeating the factor of annexation. Rothermich counters that the test is not whether the item can be easily removed, but whether it was intentionally affixed in a permanent manner and required for the operation of the particular bowling alley.

Rothermich's reliance on *Leawood Nat'l Bank of Kansas City v. City Nat'l Bank & Trust Company of Kansas City*, 474 S.W.2d 641 (Mo.App.1971), is misplaced. In *Leawood*, the purchaser at a bankruptcy foreclosure sale contended that hydraulic lifts installed in an auto garage constituted fixtures and came with the real estate, as against the purported lessor of the lifts who claimed them as personal property pursuant to its security agreement with the bankrupt owner of the garage. *Id.* at 642–43. While recognizing that agreements between parties can control whether an item is deemed a fixture or personal property, the court did not give effect to the lease agreement in that case. *Id.* The court noted that prior to executing the lease agreement, the lifts had been installed in the garage with the intent by the owner for them to be a permanent accession, and that at the time of installation the lifts had become fixtures subject to the recorded deed of trust. *Id.* Further, because the lease agreement itself was not recorded and the

**6.** Rothermich also cites an affidavit she filed in opposition to Bank's earlier motion for summary judgment as to her and her late husband's intent. This was not part of the stipulation of facts on which the case was submitted. Moreover, Mrs. Rothermich's intent would be irrelevant because she was not a party to any of the transactions and her testimony about her late husband's intent is hearsay.

purchaser was an innocent third party who took title through the bankruptcy trustee, the court held that the unrecorded agreement could not prejudice the purchaser's rights. *Id.* at 645.

There are several key factual distinctions between the instant appeal and those presented in *Leawood.* First, the lease agreement between St. Charles Bowl and AMF designating the pinspotters as personal property was executed at the time of the pinspotters' installation on the bowling alley premises. Second, Rothermich is not an "innocent purchaser" whose rights would be prejudiced by a characterization of the pinspotters as personal property. Also, unlike the lessor in *Leawood,* Bank properly recorded its security agreement with Weber's Lanes.

Finally, the method of annexation to the property in this case actually supports the finding that the pinspotters were to remain personal property. The undisputed facts showed that the pinspotters were not only easily removable from the bowling alley premises, but were actually removed and sold to another company for installation at another bowling alley. The removal was accomplished with no damage to the real property or to the pinspotters themselves. Thus, the method of annexation does not defeat the unequivocal manifestations of intent, by all parties concerned, to characterize the pinspotters as personal property, but instead, supports a finding that the element of annexation was not met.

■ Bank next argues that the trial court erred in finding the pinspotters were fixtures because the third element of adaptation to the real estate was not met. Specifically, it asserts that the pinspotters were not sufficiently adapted to the use to which the real estate was devoted to indicate a permanent accession was intended. Rothermich counters that the element of adaptation was clearly met because the pinspotters were an absolute necessity to the bowling alley operation, and that the building was designed for the sole purpose of being a bowling alley which required the pinspotters for its operation.

As stated above, the intention of the parties as to the characterization of the article must control, and as with the element of annexation, the element of adaptation is important to consider when the intent of the parties is not clear. Although the intent of the parties is undeniably clear, the undisputed facts also establish that the pinspotters were not so adapted to the premises as to become fixtures of the real property.

■ The "adaptation" element refers to the characteristics of fitness or suitability of the item for the building or premises in question. *Hoffman Management Corp.,* 800 S.W.2d at 760. *State ex rel. State Highway Comm'n v. Wally Hutter Oil Co.,* 467 S.W.2d 279, 282 (Mo.App.1971). The item in question should be peculiarly adapted to the real property or premises. *Hoffman Management Corp.,* 800 S.W.2d at 760. An item usable at other locations is not peculiarly adapted for use on the land in question. *See Wally Hutter Oil Co.,* 467 S.W.2d at 282. The fact that the item was actually removed and installed elsewhere further reinforces the conclusion that the item was not so peculiarly adapted to the realty as to constitute a fixture. *Blackwell Printing Co. v. Blackwell–Wielandy Co.,* 440 S.W.2d 433, 438 (Mo.1969).

In this case, the pinspotters were part of the standard equipment used in the bowling alley industry. While it is true that the lanes at the bowling alley were specially adapted for the use of the pinspotters, there is nothing peculiar or unique about these particular pinspotters and nothing requires that these particular pinspotters be used. On the contrary, the facts established that the purchaser of the bowling alley real estate at the foreclosure sale purchased and installed replacement pinspotters for use in the same alley lanes without difficulty, and the pinspotters from Weber's Lanes were purchased and installed in a bowling alley elsewhere as well.

Thus, there was no peculiar adaptation of the pinspotters to the bowling alley premises, and the adaptation element was not sufficiently satisfied for the pinspotters to be considered fixtures.

In view of our determination that the pinspotters are personal property and not fixtures, it is unnecessary to address Bank's remaining point on appeal. The judgment of the trial court is reversed and judgment is hereby rendered in favor of Bank.

MARY RHODES RUSSELL, C.J., Concurs.

JAMES A. PUDLOWSKI, Sr. J., Concurs.