# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-1997

_____

David Mouser; Donald Green,                    *
                                               *
    Plaintiffs–Appellants,            *
                                               *    Appeal from the United States
v.                                             *    District Court for the
                                               *    Eastern District of Missouri
Caterpillar, Inc., a Delaware                  *
Corporation,                                   *
                                               *
    Defendant–Appellee.               *
                                               *

_____

Submitted:  November 8, 2002

Filed:  July 15, 2003

_____

Before McMILLIAN and MELLOY, Circuit Judges, and FRANK,[1] District Judge.

_____

McMILLIAN, Circuit Judge.

    David Mouser ("Mouser") and Donald Green ("Green") (together "plaintiffs") appeal from a final order entered in the United States District Court for the Eastern

___

[1]The Honorable Donovan W. Frank, United States District Judge for the District of Minnesota, sitting by designation.

District of Missouri[2] granting judgment as a matter of law ("JAML") in favor of Caterpillar, Inc. ("defendant"), on plaintiffs' claims stemming from an industrial accident and conditionally granting defendant's motion for a new trial. See Mouser v. Caterpillar, Inc., No. 4:98CV744 (E.D. Mo. Mar. 5, 2002) (hereinafter "slip op."). For reversal, plaintiffs argue that the district court erred in granting JAML in favor of defendant because the rubber mixer that injured them was a dangerous chattel instead of a fixture on defendant's real property. Plaintiffs argue that because the district court improperly concluded that defendant permanently annexed the mixer to its rubber manufacturing plant, the district court erred in holding that Missouri premises liability law applied and that their recovery was limited to workers' compensation benefits. Plaintiffs also argue that the district court erred in denying their motion to amend their pleadings to conform to the evidence at trial and in conditionally granting defendant's motion for a new trial. For the reasons discussed below, we affirm the judgment of the district court.

Jurisdiction in the district court was proper based on 28 U.S.C. § 1332. Jurisdiction in this court is proper based upon 28 U.S.C. § 1291. The notice of appeal was timely filed pursuant to Fed. R. App. P. 4(a).


FACTS


The facts and procedural history are largely drawn from the order of the district court. Plaintiffs were employees of Topeka Machinery Exchange ("TME"), an independent contractor hired by defendant to repair a 3D Danbury rubber mixer at defendant's rubber manufacturing plant in Booneville, Missouri. The mixer was installed at the Booneville plant in 1992 as part of a rubber processing system which

[2]The Honorable Frederick R. Buckles, Chief United States Magistrate Judge for the Eastern District of Missouri, who tried this case pursuant to the consent of the parties under 28 U.S.C. §636(c).

includes the mixer, the mill, and multi-level platforms and mezzanines where operators access different levels of the mixing system. The mixer must be integrated into the plant's gas, electric, water, and ventilation systems in order to function. It is approximately twenty feet tall, or approximately fifty feet tall if the rubber mixing "hoppers" are included, and weighs approximately twenty tons. On March 21, 1997, plaintiffs were injured when the stop-pin holding a 900-pound floating weight inside the mixer's main hopper came loose as the crew was reattaching it to the mixer. As a result, the weight crushed Mouser's left hand and Green's right hand.

In 1998, plaintiffs filed a lawsuit in the Circuit Court for the City of St. Louis, Missouri. Plaintiffs' action was later removed to the United States District Court for the Eastern District of Missouri.[3] Plaintiffs' original complaint brought products liability claims alleging that the safety stop-pin was defective. In its answer, defendant argued that plaintiffs' complaint failed to state a claim upon which relief could be granted and that plaintiffs' remedy was limited to workers' compensation benefits. On August 20, 1999, plaintiffs filed a second amended complaint, restating their products liability claim against all defendants and asserting an additional, independent tort claim against defendant captioned "Premises Liability."[4] Plaintiffs' premises liability claim alleged that the stop-pin assembly on the rubber mixer constituted a dangerous condition, which created a duty for defendant to warn, remove, or barricade the danger, and that defendant's failure to do so caused plaintiffs' injuries. Defendant's answer to the second amended complaint adopted

---

[3]Although defendant owned the mixer, it was designed, manufactured, and sold by separate entities, Soberay Machine & Equipment Co. ("Soberay") and Louis Perry & Associates, Inc. ("Louis Perry"). Plaintiffs brought products liability claims against Soberay and Louis Perry in their complaints. Although some of the claims survived summary judgment, Soberay and Louis Perry settled with plaintiffs prior to the commencement of the first trial, leaving Caterpillar the sole defendant.

[4]In their first amended complaint, plaintiffs added additional defendants to their action and reasserted their products liability claims against all defendants.

and incorporated the affirmative defenses asserted in its earlier answer. The case proceeded through discovery.

On October 2, 2000, the district court granted defendant's motion for summary judgment on plaintiffs' products liability claim. The district court, however, denied defendant's motion for summary judgment as to plaintiffs' premises liability claim and permitted plaintiffs to proceed to trial. In their trial brief, plaintiffs summarized their claim against defendant as premises liability, arguing that the safety stop-pin assembly constituted a dangerous condition on the land for which defendant owed a duty to warn its invitees. In response, defendant argued that the stop-pin was not unsafe, and that, even if it were, plaintiffs were aware that parts of the mixer might not be functioning properly because they were on the premises to repair the mixer. On October 27, 2000, the case was submitted to the jury, which was unable to reach a verdict, and the district court declared a mistrial.

The case was set for retrial on July 30, 2001. On July 25, 2001, defendant filed a supplemental trial brief arguing for the first time that plaintiffs could not recover on their premises liability claim because landowners are not liable under Missouri law to the employees of independent contractors for injuries sustained while working if the employees are covered by workers' compensation insurance. The contract between defendant and TME required TME to maintain workers' compensation insurance for its employees. On July 30, 2001, plaintiffs filed a supplemental trial brief which argued that defendant's newly raised defense was inapplicable because their injuries were caused by defendant's negligent bailment of a dangerous chattel, namely the mixer, without warning of the potentially dangerous condition. The case proceeded to trial on July 30, 2001. On August 1, 2001, at the close of plaintiffs' case, defendant moved for JAML, arguing that plaintiffs could not recover on their premises liability claim because they were covered by workers' compensation insurance. In response, plaintiffs argued that their claim for recovery was based upon

the fact that the mixer was a dangerous chattel and defendant's premises liability defenses were therefore inapplicable.

On August 2, 2001, at the close of all the evidence, defendant again moved for JAML, and plaintiffs filed a motion for leave to amend their complaint to conform to the evidence. The district court denied defendant's motion, and the case was submitted to the jury. Plaintiffs' proposed verdict director for their premises liability claim was modeled after Missouri Approved Instruction No. 22.03 – "Invitee Injured." Plaintiffs did not submit any additional verdict directors. The jury returned verdicts in favor of plaintiffs. Defendant then renewed its earlier motion for JAML and in the alternative moved for a new trial.

On March 5, 2002, the district court issued an order granting defendant's motion for JAML and conditionally granting a new trial. In its order, the district court stated that the case turned on whether the rubber mixer and its components were a fixture of the real estate, and thus part of the premises, or a chattel that defendant turned over to plaintiffs for repairs. The district court noted that under Missouri law "[a] fixture is an article of personal property which has been so annexed to the real estate that it is regarded as part of the land." Slip op. at 10 (quoting In re Marla Jean, Inc., 25 B.R. 282, 284 (Bankr. W.D. Mo. 1982) (Marla Jean) (additional citations omitted)). The district court observed that three elements must be satisfied before an item may be considered a fixture: (1) annexation to the realty; (2) adaptation to the premises; and (3) the annexor's intent for the object to become a permanent accession to the property. Id. at 11 (citing Sears, Roebuck & Co. v. Seven Palms Motor Inn, Inc., 530 S.W.2d 695, 696-97 (Mo. banc 1975) (Sears)). Applying this test, the district court found that the mixer was a fixture because it was constructed and installed in defendant's rubber mixing plant for the purpose of manufacturing rubber parts for defendant's machines. Id. at 13-14. The district court noted that, under the "integrated industrial plant rule," the mixer was considered constructively annexed to the land because of its permanent use and necessary role in defendant's plant operations. Although the mixer was bolted to the plant floor and its components,

-5-

including the stop-pin assembly, could be removed for repairs, the district court concluded that the mixer was nevertheless annexed to the land because the components could not function independently and their removal rendered the mixer inoperable. Id. (citing Sears, 530 S.W.2d at 698). The district court also concluded that defendant's intent to permanently annex the mixer to the realty could be inferred because it was a useful adjunct or convenient accessory to the plant. Id. (citing Leawood Nat'l Bank v. City Nat'l Bank & Trust Co., 474 S.W.2d 641, 644 (Mo. Ct. App. 1971) (Leawood) (holding that intent to permanently annex a chattel may be inferred where the affixed chattel becomes a useful adjunct or convenient accessory to the business conducted on the premises)). Based on the foregoing reasons, the district court concluded that the mixer and its component parts were not "chattel," but a fixture on the defendant's real estate and thus part and parcel of the premises. Id. at 15. Therefore, the district court concluded that it was futile to permit plaintiffs to amend their complaint to convert their premises liability claim to one for "dangerous chattel." Id.

The district court also held that, because plaintiffs' claim was governed by premises liability law, their damages recovery was limited to workers' compensation benefits. The district court noted that, under Missouri law, where an employee of an independent contractor is injured on a landowner's property during the course of working for the independent contractor, the landowner cannot be liable to the injured employee if the independent contractor is required to carry workers' compensation insurance. Id. at 16. (citing Matteuzzi v. Columbus P'ship, L.P., 866 S.W.2d 128, 132 (Mo. banc 1993) (Matteuzzi)). Because TME was an employer required by Missouri law to provide workers' compensation benefits, plaintiffs were precluded from any recovery from defendant on a premises liability claim. Id. at 18-19. Therefore, the district court granted defendant's motion for JAML. Id. at 19.

The district court also conditionally granted defendant's alternative motion for a new trial pursuant to Fed. R. Civ. P. 50(c)(1) because defendant would have been entitled to a new trial if the mixer were found to be a chattel. Id. at 20. The district

court noted that the claim was submitted to the jury with instructions modeled after Missouri Approved Instruction No. 22.03, "Invitee Injured."[5] Id. These instructions differed from Missouri Approved Instruction No. 25.10(A), "Negligently Supplying a Dangerous Instrumentality," which requires additional elements of proof.[6] Id. at 21. Therefore, the district court concluded that, if the mixer were a chattel, defendant was prejudiced by the submission of the premises liability instruction because plaintiffs bore a lesser burden under that instruction. Id. at 21-22. Because the instructional error would have had a prejudicial effect on the merits of the case, the district court held that defendant would have been entitled to a new trial. Id. at 22.

---

[5]The verdict director submitted to the jury read as follows:

[Y]ou must assess a percentage of fault to defendant Caterpillar, Inc.[,] if you believe:
First, at the time of the accident referred to in the evidence, there was an inadequate safety stop pin mechanism on the rubber mixer at Defendant's Caterpillar facility, and as a result the rubber mixer was not reasonably safe, and
Second, Defendant, Caterpillar, Inc., knew or by using ordinary care could have known of this condition, and
Third, Defendant Caterpillar, Inc., failed to use ordinary care to remove it, repair it, or warn of it, and,
Fourth, such failure to exercise ordinary care directly caused or directly contributed to cause damage to Plaintiff[s].

See slip op. at 20 (citing Jury Instructions Nos. 13 and 16).

[6]Under Missouri Approved Instruction No. 25.10(A), plaintiffs would have to prove that: (1) defendant supplied the dangerous instrumentality; (2) the instrumentality was unsafe when put to its reasonably expected use; (3) the instrumentality was put to its reasonably expected use; (4) defendant had no reason to believe that the user would realize its dangerous condition; (5) defendant knew or had information from which defendant, exercising ordinary care, should have known of the dangerous condition; (6) defendant failed to adequately warn of the dangerous condition; (7) defendant was thereby negligent; and (8) plaintiffs were injured as a direct result.

-7-

This appeal followed.

DISCUSSION

We review the district court's decision to grant JAML *de novo*, applying the same standards as the district court. Hunt *ex rel.* Hunt v. Lincoln County Mem'l Hosp., 317 F.3d 891, 893 (8th Cir. 2003) (quoting Sip-Top, Inc. v. Ekco Group, Inc., 86 F.3d 827, 830 (8th Cir. 1996)). "'A motion for a judgment as a matter of law should be granted when all the evidence points one way and is susceptible of no reasonable inferences sustaining the position of the nonmoving party.'" Id. (quoting Neely v. Am. Family Mut. Life Ins. Co., 123 F.3d 1127, 1129 (8th Cir. 1997) (additional citations omitted)).

I.

We first address whether the district court correctly found that the mixer was a fixture of defendant's real estate as opposed to a chattel as argued by plaintiffs. Plaintiffs contend that the district court incorrectly held that the mixer was annexed to defendant's plant. As noted by the district court, under Missouri law, annexation requires a showing of: (1) annexation to the realty; (2) adaptation to the use to which the realty is devoted; and (3) the intent of the annexor that the object becomes a permanent accession to the land. Sears, 530 S.W.2d at 696-97. Plaintiffs argue that the district court's findings of intent and adaptation are not supported by the record. Instead, plaintiffs argue that the evidence supports a reasonable inference that defendant did not intend to permanently annex the rubber mixer. Plaintiffs note that a presumption of intent not to permanently annex may be created where a chattel may be easily removed without any "material injury to the freehold." Marla Jean, 25 B.R. at 285. In this case, the mixer was bolted to the floor and could be removed and disassembled for repairs. Moreover, plaintiffs argue that the record shows that the rubber mixer was bolted to the floor to prevent movement during operation, not as a mode of permanent annexation. Defendant also chose not to install floor pits to

accommodate the mixer's height, as was suggested in a sales proposal, further supporting the inference that defendant did not intend to permanently annex the mixer to its property. Therefore, plaintiffs argue that, based on the record, the only reasonable conclusion was that defendant never considered the mixer permanently annexed to the plant.

Plaintiffs similarly contend that the district court erred in holding that the mixer was adapted to the use to which the realty was devoted. Plaintiffs argue that defendant failed to meet the adaptation element of the Sears test because the mixer was not peculiarly adapted to defendant's rubber making facility. Plaintiffs note that in another annexation case, Rothermich v. Union Planters Nat'l Bank, 10 S.W.3d 610, 617 (Mo. Ct. App. 2000) (Rothermich), the court held that bowling pin-setting machines were not fixtures in a bowling alley because they were removed and reinstalled in another location, and were not therefore peculiarly adapted to the realty. Id. (noting "[a]n item usable at other locations is not peculiarly adapted for use on the land in question"). Similarly, plaintiffs maintain that defendant's rubber mixer had been used at a different premises and then rebuilt at defendant's plant. Moreover, defendant had another Danbury mixer at its Mossville Hose Plant that could be used as a replacement. These facts, plaintiffs argue, defeat defendant's claims of adaptation because they demonstrate that the mixer was not peculiarly adapted to the realty so as to constitute a fixture.

We review the district court's interpretation of Missouri law de novo. Hammer v. City of Osage Beach, 318 F.3d 832, 841 (8th Cir. 2003) (Hammer) (citing Toney v. WCCO Television, Midwest Cable & Satellite, Inc., 85 F.3d 383, 386 (8th Cir. 1996)). Based on the record, we agree with the district court that the rubber mixer in defendant's plant was a fixture because all three elements of the Sears test were satisfied. As noted by the district court, Missouri has adopted the doctrine of "constructive annexation" whereby a particular article, although not permanently attached to the land, "may be so adapted to the use to which the land is put that it may be considered an integral part of the land and constructively annexed thereto." Sears,

530 S.W.2d at 697 (citations omitted).  When this doctrine applies to machinery in an industrial setting, it is sometimes referred to as the "integrated industrial plant rule."  Id. at 698.  We agree with the district court that, under the integrated industrial plant rule, the mixer and all of its components, including the stop-pin mechanism, were an integral part of the rubber mixing system, and therefore constructively annexed to defendant's plant.  Similarly, the most important elements in determining whether the mixer was a fixture, intent and adaptation, were both satisfied by the way the mixer was incorporated into the plant's operations.  See id. at 697 (citing Crane v. Epworth Hotel Constr. & Real Estate Co., 121 Mo. App. 209 (1906) (slight annexation will not prevent an article from becoming a fixture where it is adapted to the realty's proper use and the owner intended it to constitute part of the object for which the realty was constructed)).  Although the mixer and its components could be removed without "material injury to the freehold," defendant's intent to permanently annex the mixer may be inferred because the mixer was a useful adjunct or convenient accessory to the plant.  Leawood, 474 S.W.2d at 644.  Similarly, despite plaintiffs' claims that the mixer was not "peculiarly adapted" to the realty, we agree with the district court that the mixer was constructed and installed in defendant's plant for the purpose of manufacturing rubber parts specifically for Caterpillar products.[7]  See Heidegger v. Milling Co.,16 Mo. App. 327, 1884 WL 9343, at *2

---

[7]Although Rothermich v. Union Planters Nat'l Bank, 10 S.W.3d 610, 615-16 (Mo. Ct. App. 2000) (Rothermich), held that an item usable at other locations is not peculiarly adapted for use on the land in question, the bowling pin-setting machines at issue in that case were leased by the bowling alley operator, who gave the lessor a security interest in the equipment.  The lease specified that the pin-spotters were to remain personal property, even after installation, in order to remain subject to the security agreement.  The Rothermich court also noted, however, that "the intention of the parties as to the characterization of the article must control," and that the elements of annexation and adaptation are important to consider when "the intent of the parties is not clear."  Id. at 617.  As noted above, we believe defendant's intent to permanently annex the rubber mixer may clearly be inferred from the fact defendant installed the mixer for the purpose of manufacturing rubber parts for its products and can therefore be distinguished from the pin-setting machines at issue in

(1884) (<u>Heidegger</u>) (holding that "everything put into and forming part of the building or machinery for manufacturing purposes, and essential to the manufactory, is part of the freehold") (citations omitted). Thus, we agree with the district court that the rubber mixer and the stop-pin were fixtures of the real estate and therefore part and parcel of Caterpillar's real property. Slip op. at 15 (citing <u>Heidegger</u>, 16 Mo. App. 327).

II.

Plaintiffs also argue that the district court improperly applied Missouri law regarding premises liability. Plaintiffs note that the principal case relied on by the district court, <u>Matteuzzi</u>, and its progeny all involve construction or renovation of a building. <u>See</u>, <u>e.g.</u>, <u>Matteuzzi</u>, 866 S.W.2d at 129 (plaintiff injured during renovation of a rowhouse); <u>Smart v. Chrysler Corp.</u>, 991 S.W.2d 737, 739 (Mo. Ct. App. 1999) (plaintiff injured during construction of a steel platform for renovations in an automotive plant paint shop); <u>Gillespie v. St. Joseph Light & Power Co.</u>, 937 S.W.2d 373, 374 (Mo. Ct. App. 1996) (<u>Gillespie</u>) (plaintiff injured during the installation of computer cable on top of structural beams). In this case, plaintiffs argue that the rubber mixer was a removable chattel and that they were injured while performing service and maintenance to the machine. Plaintiffs note that, had the mixer been removed from defendant's plant and shipped to another location for repair, an offsite worker would have a claim for negligence against defendant for failure to warn of a dangerous condition. <u>See</u> <u>Gilpin v. Pitman</u>, 577 S.W.2d 72 (Mo. Ct. App. 1978). In addition, plaintiffs argue that the district court erred in determining that their action was for premises liability instead of one for a dangerous chattel. Plaintiffs argue that

Rothermich. <u>See</u> <u>Leawood Nat'l Bank v. City Nat'l Bank & Trust Co.</u>, 474 S.W.2d 641, 644 (Mo. Ct. App. 1971) (noting that "where . . . the object in its affixed form is a useful adjunct or convenient accessory to the business conducted on the premises, the intention of the landowner to annex it permanently to the realty may be inferred").

the district court improperly relied on the caption of their pleadings, which contained the phrase "premises liability." Instead, plaintiffs argue that it is clear from the pleadings that their claim was related to the stop-pin on the rubber mixer, not for a defect on the premises.

Again, we review the district court's interpretation of Missouri law *de novo*. Hammer, 318 F.3d at 841. Under Missouri law, the general rule is that a landowner is not liable for injuries to the employees of independent contractors for work done on the premises if the employees are covered by the independent contractor's workers' compensation insurance.[8] Matteuzzi, 866 S.W.2d at 131-32; Zueck v. Oppenheimer Gateway Properties, Inc., 809 S.W.2d 384, 388-89 (Mo. banc 1991) (Zueck). This is true even in cases where the landowner was directly negligent. Gillespie, 937 S.W.2d at 379. Missouri courts adopted this rule to reflect the "economic reality" of the workers' compensation system. Id. at 376 (citing Zueck, 809 S.W.2d at 389). "Where a contractor's employees are covered by workers' compensation, the amount that the contractor charges the landowner includes the cost of the contractor's workers' compensation insurance." Id. To make a landowner

_____

[8]Although there are two exceptions to the rule barring landowner liability, neither is applicable here. The first exception applies when the landowner substantially controls the physical activities of the employees involved or the manner in which the work is done such that the duty of care never shifts to the independent contractor. Halmick v. SBC Corp. Serv., Inc., 832 S.W.2d 925 (Mo. Ct. App. 1992). This exception includes injuries that occur in a common area that remained under the landowner's control. Mullins v. Tyson Foods, Inc., 143 F.3d 1153 (8th Cir. 1998). Plaintiffs do not contend, nor does the record show, that defendant retained control of the job site or that plaintiffs' injuries occurred in a common area, so this exception does not apply. The second exception applies when the employee of an independent contractor is not covered by workers' compensation insurance and is injured performing inherently dangerous activities. Matteuzzi v. Columbus P'ship, L.P., 866 S.W.2d 128, 130 (Mo. banc 1993). This exception is also inapplicable because TME was required by statute and by contract to retain workers' compensation insurance for its employees.

liable for the injuries suffered by the independent contractors' employees would, in effect, force the landowner to pay for the same injury twice. Id. The key issue is whether the independent contractor was subject to workers' compensation laws and therefore liable thereunder, not whether the injured employee actually recovered workers' compensation benefits.[9] See Scott v. Edwards Transp. Co., 889 S.W.2d 144, 146 (Mo. Ct. App. 1994). Here, there is no dispute that plaintiffs were covered by workers' compensation. TME was required to provide workers' compensation insurance by statute[10] and through its contract with defendant. Therefore, we conclude that the district court correctly found that plaintiffs were precluded from recovery on their premises liability claim and properly granted defendant's motion for JAML. See Belk v. City of Eldon, 228 F.3d 872, 878 (8th Cir. 2000) (noting "post-verdict judgment as a matter of law is appropriate only where the evidence is entirely insufficient to support the verdict").

## III.

Plaintiffs next argue that the district court erred in denying their motion to amend their pleadings to conform to the evidence presented at trial. Plaintiffs maintain that the district court erred in holding that such an amendment would be "futile" because the mixer was a fixture of the real property. Plaintiffs note that the district court previously stated in response to defendant's oral objection to plaintiffs' motion to amend that, even if such a motion was not previously submitted formally,

---

[9]Although not dispositive, Green filed a claim for his injuries and received workers' compensation benefits. Mouser also filed a claim, but he later voluntarily dismissed it.

[10]TME was liable under the Missouri Workers' Compensation Act because it was a corporation using the services of another for pay (Mo. Rev. Stat. § 287.030.1(1)), with five or more employees (id. § 287.030.1(3)), for injuries that occurred in Missouri (id. § 287.110.2). TME was therefore liable for personal injuries suffered by its employees arising from the course of employment. Id. § 287.120.1.

"it was done de facto by virtue of the instructions that were submitted to the jury [at the close of the first trial]." Trial Transcript Vol. VI at 36. Plaintiffs therefore argue that, because the district court recognized that the pleadings were previously amended de facto, and because the district court's conclusion that the rubber mixer was a fixture was erroneous, the district court abused its discretion in denying the motion to amend.

We review the district court's denial of leave to amend for abuse of discretion. Grandson v. Univ. of Minn., 272 F.3d 568, 575 (8ᵗʰ Cir. 2001) (Grandson).

> When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment to the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment.

Fed. R. Civ. Proc. 15(b). Amendments under Rule 15(b) are to be liberally granted "where necessary to bring about the furtherance of justice and where the adverse party will not be prejudiced." McLaurin v. F.C. Prater, 30 F.3d 982, 985 (8ᵗʰ Cir. 1994) (quoting Corsica Livestock Sales v. Sumitomo Bank, 726 F.2d 374, 377 (8ᵗʰ Cir. 1983)). The decision to permit or deny an amendment remains within the discretion of the district court. Id. Because we agree that the mixer that injured plaintiffs was a fixture on defendant's real property, we hold that the district court did not abuse its discretion in denying plaintiffs' motion to amend their pleadings to conform to the evidence because the proposed amendment would have been futile. Grandson, 272 F.3d at 575 (noting a court may deny leave to amend if the proposed amended pleading is futile). Thus, we uphold the district court's denial of plaintiffs' motion to amend their complaint.

IV.

Because we uphold the district court's grant of JAML and denial of plaintiffs' leave to amend, we decline to address the district court's grant of a conditional new trial.

CONCLUSION

Accordingly, the judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.