**HILTY LIMITED FAMILY PARTNERSHIP, LP, a Missouri Limited Partnership, Appellant,**

v.

**Gary M. SCOTT, as Trustee of the Gary M. Scott Revocable Trust Dated 9/11/1998, Respondent.**

No. WD 74539.

Missouri Court of Appeals, Western District.

Sept. 25, 2012.

Robert L. Cox, Clinton, MO, for appellant.

Robert M. Thompson and James T. Wicks, Kansas City, MO, for respondent.

Before DIV I: JAMES M. SMART, JR., Presiding Judge, LISA WHITE HARDWICK, Judge and GARY D. WITT, Judge.

GARY D. WITT, Judge.

Appellant Hilty Family Limited Partnership, LP ("HFLP"), sought replevin and damages in relation to an above-ground irrigation system that is situated on farmland now owned by Respondent Gary M. Scott, as Trustee of the Gary M. Scott Revocable Trust dated 9/11/1998 ("Scott"). The trial court ruled that the irrigation system transferred with ownership of the land to Scott and consequently denied HFLP's claims. HFLP appeals, and for the reasons explained below, we affirm.

### Factual Background [1]

This case arises from the transfer of farmland on which an irrigation system was situated. Though the history of ownership of the land and irrigation system is a bit complicated, the issue in the case turns rather simply on the status of the irrigation equipment: first, whether that equipment was a fixture, and if so, then second, whether the UCC filing securing the interest in that equipment was validly perfected.

Deepwater Seed Farms, LLC, with Wayne Vassar ("Vassar") as the managing

---

1. Because this was a judge-tried case, we view the evidence and findings in the light most favorable to the trial court's judgment. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

member, owned the parcel of farmland in Henry County, Missouri, that is the subject of this action. The farmland was subject to two mortgages. To fund the purchase of the land, Vassar and his wife borrowed money from Farm Credit Services ("FCS"). As security, FCS received a first deed of trust on the property. The seller of the parcel, the Bill Hoppe Trust, financed the remaining balance and took a second deed of trust as security for its interest. That second deed of trust was secured by the real estate and "hereditaments and appurtenances thereto."

In 2008, Vassar purchased irrigation equipment for the farm by way of a loan from United Missouri Bank ("UMB Bank"). The security agreement between UMB Bank and Vassar indicated that the collateral was "All Equipment." [2]

Though UMB Bank filed a UCC financing statement, pursuant to Section 400.9–310,[3] on the irrigation equipment with the Missouri Secretary of State's Office, the purchaser (Vassar's entity) was incorrectly identified as "Deepwater Seed Farm, LLC" ("Farm" should have properly been "Farms"). A search with the Secretary of State's office under the correct name did not turn up the lien on the irrigation equipment because of the misspelling.[4] In addition, UMB Bank did not file a fixture filing in the Henry County real estate records as to the irrigation equipment. UMB Bank representative Earnest Staashelm ("Staashelm") testified that the reason the bank did not file in the county real estate records was that it did not classify the irrigation equipment as a "fixture" because the bank's position that it was readily moveable, and therefore personal property.

In March, 2010, due to the note being in default on its debt, the trustee of the Bill Hoppe Trust, foreclosed its second deed of trust on the farmland. Notice of the trustee's sale was published on March 18, 2010.

The following month, on April 2, 2010, UMB Bank sold the note it believed was secured by the irrigation equipment, which was also in default, to HFLP. John Hilty ("Hilty") is a general partner of HFLP.[5] The "Assignment of Note, Security Agreement, and Commercial Guaranty" between HFLP and UMB Bank indicates that HFLP purchased the delinquent note for $175,000.[6]

Respondent Scott bought the farm at the foreclosure sale, subject to the first deed of trust. The foreclosure sale was held April 14, 2010. Scott testified that he had no knowledge of the lien on the irrigation system. Scott also testified that, in determining the amount he bid per acre at the foreclosure sale, he had factored in the irrigation system.

---

2. The "equipment" included the irrigation system as well as a bulldozer and a tractor.

3. All statutory citations are to RSMo 2000 as updated through the most recent cumulative supplement, unless otherwise indicated.

4. HFLP does not argue on appeal that the misspelled name constituted sufficient notice of its lien.

5. Hilty's father and brother both sit as members of UMB Bank's advisory board.

6. At trial, two promissory notes regarding the irrigation equipment were entered into evidence, and some question arose at trial as to which was effective. The notes had loan dates that differed by a month and differed in the total amount loaned by approximately $8,000: one was originally for $275,090 and was dated September 16, 2008; the second was originally for $283,867.82 and was dated October 16, 2008. The assignment referenced the October note, but HFLP sued under the September note. The trial court allowed HFLP at trial to amend its petition to change the note sued on to the September version. Hilty testified that he did not know which note he purchased. No assignment of the September note was in evidence at trial.

Hilty was present and was a bidder at the foreclosure sale when Scott bought the farm, and Hilty did not mention his claim to the irrigation equipment. After the sale, Hilty brought action against Scott for replevin and damages.

In its judgment, the trial court found in favor of Scott, and made the following findings in its judgment:

Defendant was the purchaser for value of a parcel of real estate at a Trustee[']s foreclosure sale in Henry County, which included among other items center pivot irrigation systems designed to provide water for crops grown on the farm;

Plaintiff was an attendee at the sale, participating in the bidding and at no time asserted any claim or demand regarding priority over the irrigation system;

Following the sale[,] Plaintiff made demand and the subsequent lawsuit was filed.

Further facts are set forth below.

## Standard of Review

We review a bench-tried case under *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). "This Court will affirm the judgment of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law, accepting all evidence and inferences therefrom in the light most favorable to the prevailing party and disregarding all contrary evidence." *Essex Contracting Inc. v. Jefferson County*, 277 S.W.3d 647, 652 (Mo. banc 2009) (citation omitted).

"Further, on appeal of a court-tried case, the appellate court defers to the trial court on factual issues because it is in a better position not only to judge the credibility of witnesses and the persons directly, but also their sincerity and character and other trial intangibles which may not be completely revealed by the record." *Id.* Neither party requested findings of fact or conclusions of law from the trial court. While some factual findings were included by the trial court in its judgment, we review all factual issues as having been consistent with the trial court's decision.

## Analysis

HFLP raises two points on appeal. It argues first that the trial court erred in denying its claim for replevin and damages as to the irrigation equipment because the equipment did not pass to Scott by the trustee's deed in that the equipment was personal property that the deed did not convey. In its second point, HFLP argues that the trial court erred in denying its claim for replevin and damages because HFLP established its right to possession in that HFLP's ownership of debt and corresponding security agreement granted it the right to repossess the equipment upon Vassar's default.

## I.

**The trial court did not err in determining that Scott was the purchaser for value of real estate that included the irrigation system** [7]

■ The crux of HFLP's first point on appeal is that the irrigation system was not a fixture [8] and did not pass with the

---

7. Though HLFP argues on appeal that it is challenging the trial court's application of the law to the relevant facts, it argues broadly that the trial court's error was in finding that the irrigation equipment was a "fixture." HFLP does not identify any misapplication of law. Therefore, under *Murphy, supra*, we will affirm the trial court's judgment unless there is no substantial evidence to support it or unless it is against the weight of the evidence. 536 S.W.2d at 32.

8. "Fixture" is defined as goods that "have become so related to particular real property that an interest in them arises under real property law." Section 400.9–102.

land.[9] Tied to the factual question of whether the irrigation system became a fixture is HFLP's argument that the equipment was personal property that the trustee's deed did not convey. Specifically, HFLP argues that the irrigation equipment is personal property that does not fall within the "hereditaments and appurtenances thereto" clause.

■ But under a trustee's deed, if the equipment constitutes a fixture, then it passes with the land. "Personal property may be so annexed to real estate that it is part of the land, a 'fixture.'" *Buchholz Mortuaries, Inc. v. Director of Revenue*, 113 S.W.3d 192, 193 (Mo. banc 2003) (citation omitted). *See also Cattoor v. Wells*, 641 S.W.2d 492, 494 (Mo.App. E.D.1982) (if, at time of sale under deed of trust, property retains its character as a fixture, the fixture passes by the sale of the real property). In this case, then, HFLP's broad argument that the deed of trust at the foreclosure sale did not convey after-acquired property, irrigation equipment, or personal property is not of consequence if the property has become so annexed to real estate so as to become a fixture.

■ In determining whether property is a fixture, courts look at three factors: (1) annexation to the land, (2) adaptation to location, and (3) intent of the annexor at the time of annexation. *Buchholz*, 113 S.W.3d at 193. "The latter two elements, adaptation and intent, are more important in determining whether a chattel became a fixture than the method by which the chattel is affixed to a freehold." *Freeman v. Barrs*, 237 S.W.3d 285, 289 (Mo.App. S.D.

2007) (citation omitted). "These elements or tests all present questions of fact and are not ordinarily resolvable by law." *Freeman*, 237 S.W.3d at 289. Whether or not an article is a fixture depends upon the facts and circumstances of a particular case. *Id.*

■ "Annexation that may be slight and easily displaced does not prevent an article from becoming a fixture when the other two elements are found." *Id.* As to annexation, viewing the facts in the light most favorable to the trial court's finding, the record reflects the following: Vassar added six pivot irrigation systems and supporting equipment, two on the south half of the farm and four on the north. The two systems on the south half of the farm have seven towers each, while the four systems on the north half range from having three to nine towers each. The six pivots are each approximately 1,300 feet in length or a quarter mile long. The central tower of each pivot is set in a six inch thick concrete pad reinforced with rebar and approximately sixteen to eighteen foot square, which Vassar installed himself. There is a seventh concrete pad for pumps and motors. The non-central towers on each pivot are connected to the central tower by "booms" of irrigation pipe through which the water travels. When in operation, each pivot sweeps the land in a circle (or portion of a circle) that is approximately half a mile in diameter.

The pivot systems are supplied by two miles of underground pipe and wire. Water for the system is piped from two irrigation lakes by electric pumps, and all

---

9. The trial court's judgment stated: "Defendant contends a. the irrigation system is a 'fixture located on the land.'" Scott argues that this constitutes a factual finding by the trial court. However, this is merely a statement as to what the "Defendant contends" and does not constitute a finding of the trial court. Nonetheless, under our standard of review, all factual issues upon which there are no specific findings are considered on appeal as having been found in accordance with the result reached, and "[w]e will affirm the trial court's judgment on any basis supported by the record." *Hirsch v. Ebinger*, 334 S.W.3d 695, 697 (Mo.App. E.D.2011) (citations omitted).

electrical components for the system are bolted to that seventh concrete pad. Underground wiring supplies electricity to the motors attached to the wheels of each non-central tower, and the motors cause the pivots to rotate. Further, to move the system to another farm, each pivot would have to be completely disassembled and loaded onto trailers. Even though each section of the pivots has wheels, because of the direction the wheels face (only allowing the pivot to move sideways), these wheels cannot be used to move the pivots on a road. There is thus substantial evidence supporting a finding that the system is annexed to the land.

 "Adaptation" refers to characteristics of fitness or suitability of the item for the building or premises in question. *Rothermich v. Union Planters National Bank*, 10 S.W.3d 610, 617 (Mo.App. E.D. 2000) (citations omitted). "The item in question should be peculiarly adapted to the real property or premises." *Id.* "An item usable at other locations is not peculiarly adapted for use on the land in question." *Id.* (citation omitted). In this case, viewing the facts in the light most favorable to the trial court's judgment, the record reflects the following: Each pivot was constructed to fit the field where it is located. Some pivots swing three-quarters around, and another swings 365 degrees around. Doug Roth, ("Roth") who sold the irrigation system to Vassar, appraised it for the parties for trial. Roth valued the system at $119,700, noting that "this equipment was originally designed for this farm." Roth also noted that "labor to remove and reinstall can represent nearly 25 percent of their value." There is thus substantial evidence supporting a finding of adaptation.

As to the third prong, HFLP relies heavily on *Rothermich* for the proposition that the intent of the annexor at the time of the annexation controls as to whether something is to be considered a fixture. 10 S.W.3d at 615. In *Rothermich*, the question was whether a bowling alley's automatic pinspotting machines, which had been bolted and screwed to the concrete floor and which were subsequently removed and installed in another alley, were fixtures. *Id.* at 612–14. In that case, the bank holding the loan on the machines had filed a financing statement with the county recorder of deeds and with the Secretary of State. *Id.* at 613. Also, a lease agreement expressly stated that the machines were to remain personal property and "not be deemed otherwise by reason of becoming attached to the premises." *Id.* at 615. Additional measures had also been taken:

> The characterization of the pinspotters as personal property was affirmed by St. Charles Bowl at the time of the lease extension with AMF in 1984 and reaffirmed upon the sale of St. Charles Bowl to Weber's Lanes in 1987. The purchase price paid by Weber's Lanes did not include consideration for the pinspotters as the parties agreed they were personal property, and the sale was made expressly contingent upon the assignment of the lease agreement with AMF. Finally, the intent of the parties to classify the pinspotters as personal property was affirmed a third time by Weber's Lanes in its security agreement with Bank upon the purchase of the pinspotters from AMF in 1989. Thus, the record is clear that the pinspotters retained their personal property characterization throughout each of the transactions and was regarded as such by all parties involved.

10 S.W.3d at 615–16.

Unlike in the instant case, *Rothermich* was tried on stipulated facts, such that the only issue on appeal was whether the court drew proper legal conclusions from stipulated facts. *Id.* at 614; *see also White v.*

*Director of Revenue,* 321 S.W.3d 298, 308 (Mo. banc 2010) (where evidence is stipulated, no deference is given to the trial court's findings; the only question before the appellate court is whether the trial court drew the proper legal conclusions from the facts stipulated). Moreover, in *Rothermich,* the owner of the pinspotters reaffirmed its characterization that the equipment was personal property throughout each of the transactions.

▮▮▮ In this case, along with the security agreement, HFLP did present two witnesses that supported its theory regarding the intent of the annexor. First, Vassar, the original purchaser of the irrigation equipment, testified that he did not intend for the equipment to become a fixture. He further testified that he would be liable to HFLP on the note if HFLP did not recover the irrigation system; therefore, he had a vested financial interest in the outcome of this litigation. Second, Hilty testified that he intended that the equipment remain personal property and cited the security agreement as evidence. But a "court may decide the issue of intent of the person making the annexation from his acts and conduct and the surrounding facts and circumstances." *Freeman,* 237 S.W.3d at 289. "It is not bound by the person's testimony on this point." *Id.* The trial judge heard the facts surrounding the installation and extensive nature of the system and was in the best position to judge the credibility of the witnesses. It noted, too, that "Plaintiff was an attendee at the sale, participating in the bidding and at no time asserted any claim or demand regarding priority over the irrigation system." As to the element of intent, then, the trial court's determination is supported by substantial evidence.

In short, though HFLP presented evidence regarding the irrigation system from which the trial court could have concluded the system was not a fixture, as

noted above, these elements or tests all present questions of fact and are not ordinarily resolvable by law. *Freeman,* 237 S.W.3d 285, at 289. Whether or not an article is a fixture depends upon the facts and circumstances of a particular case. *Id.* Here, the trial court was in the best position to make factual findings and credibility determinations, and its judgment complies with the mandate set out in *Murphy v. Carron, supra.* Given the standard of review, we are disinclined to disturb that ruling.

Point One is denied.

## II.

**The trial court did not err in determining that HFLP did not establish a right to possession by way of the security agreement**

In its second point, HFLP argues that the trial court erred in denying its claim for replevin and damages because its right to possession was established through its ownership of the debt and corresponding security agreement. Specifically, HFLP argues that the trial court's finding was against the weight of the evidence in that the purchase included an assignment of all related and necessary documents to the debt, including the commercial security agreement which covered the irrigation equipment and created a security interest therein.

However, the trial court found that Scott "was the purchaser for value of a parcel of real estate at a Trustee[']s foreclosure sale in Henry County, which included among other items center pivot irrigation systems...." Scott maintains that he was a bona fide purchaser for value because he had no knowledge of the lien on the irrigation equipment as the lien was not properly perfected with the Secretary of State's office.

In its reply brief, HLFP concedes that Scott would take the irrigation equipment as a bona fide purchaser, free of any unrecorded interest, if the trial court's fixture determination is upheld. As set out above, because this Court has determined that the trial court did not err in finding the irrigation equipment a fixture, this argument is moot.

Point Two is denied.

### Conclusion

For all of the foregoing reasons, the judgment of the trial court is affirmed.

All concur.