_____

No. 95-2594
_____

William Peanick, Jr.,                    *
                                         *
          Appellant,                     *
                                         *
     v.                                  *  Appeal from the United States
                                         *  District Court for the
Stanley Morris, Director of              *  Eastern District of Missouri.
United States Marshals Service;          *
William S. Vaughn, United                *
States Marshal,                          *
                                         *
          Appellees.                     *


_____

          Submitted:  March 19, 1996

             Filed:  September 19, 1996
_____

Before McMILLIAN, JOHN R. GIBSON, and BOWMAN, Circuit Judges.

_____

BOWMAN, Circuit Judge.


     William Peanick, Jr., a Native American, brought this Title VII
employment-discrimination action against federal officials after he twice
failed to graduate from the United States Marshals Service training
academy.  Peanick appeals from the judgment of the District Court,[1] which
largely denied his claims for relief.  We affirm the judgment of the
District Court, although our rationale differs from the reasons stated in
the District Court's order.

_____

     [1]The Honorable William S. Bahn, United States Magistrate Judge
for the Eastern District of Missouri, to whom the case was referred
for final disposition by consent of the parties pursuant to 28
U.S.C. § 636(c)(1) (1988).

In 1984 Peanick was employed by the Federal Protective Service. Sometime during that year, Peanick applied to become a Deputy United States Marshal and was provisionally accepted. He was sent to the marshal academy in Glynco, Georgia, for a mandatory two-part training course in February 1985. Peanick passed the first phase of his training, an eight-week criminal investigator school, which largely consisted of classroom instruction. Peanick failed the second phase of the training course, a five-week physical endurance program, when he injured his knee while running. He was told that he could return to the academy and take the physical fitness program again when his injury had healed completely.

On August 23, 1985, after receiving a clean bill of health from his physician, Peanick returned to the academy to repeat the five-week physical training course. As a part of basic training, all recruits must score above a certain percentile ranking for their age and gender on a physical fitness test known as the Physical Efficiency Battery (PEB). The PEB consists of five components: push-ups, sit-ups, flexibility, body-fat analysis, and a 1.5 mile run. Peanick, even after repeated attempts, was unable to complete the 1.5 mile run in the time allotted for men in his age group. Ordinarily, any recruit who fails the physical training program twice is removed from the deputy marshal position. Accordingly, on October 24, 1985, the Marshals Service wrote a letter to Peanick proposing his removal. Peanick responded to the letter by pointing out that he had suffered an injury that prevented him from meeting the PEB requirements. As a result of his response, the Marshals Service determined that instead of removal from the service, Peanick would be reassigned to the position of detention officer. A detention officer's duties are more limited than those of a deputy marshal and primarily involve judicial and prisoner security.

On January 21, 1986, the Marshals Service issued a Decision on Proposed Removal, officially informing Peanick that he would be reassigned from a deputy marshal position to that of a "Detention/Officer Guard" with a retroactive effective date of January 9, 1986. Supp. Joint App. at 27. The decision explained that Peanick would remain a detention officer until he was "able to meet all of the fitness standards for a Deputy U.S. Marshal position," at which time he could "request reassignment to [his] former status." Id. Assuming a favorable disposition of such a request, Peanick could "be reassigned to a Deputy U.S. Marshal position and placed in the accelerated promotion program." Id. Finally, the letter also informed Peanick that he could file a grievance if he was not satisfied with the decision: "If you believe that this action is being taken because of your race, color, religion, sex, national origin, age, marital status, or political activity not required by law, you may request a review of this action through the Department of Justice Complaint System." Id. at 28. The letter explained that to file a discrimination claim, Peanick should contact the Equal Employment Opportunity (EEO) officer for the Marshals Service. Peanick made no attempt to file a claim with the EEO officer at that time.

Less than a month later, on February 10, 1986, Peanick appealed his reassignment to the Merit Systems Protection Board, alleging that the reassignment was based on handicap discrimination. No mention of race or gender discrimination was made at this time. The Board dismissed the appeal on the grounds that it lacked jurisdiction over reassignments. On February 25, 1988--more than two years after the decision to reassign him as a detention officer was made--Peanick sent a letter to a personnel officer, requesting explanations for the first time about alleged race and gender discrimination in connection with the administration of the PEB test and his subsequent reassignment to detention officer. Peanick also sent a letter to the Director of the Marshals Service around the same time, complaining about

-3-

alleged discrimination on the basis of race and gender. The Associate Director for Administration of the Marshals Service responded to Peanick's letters. The associate director explained that Peanick's allegations of race and gender discrimination were untimely since Peanick failed to lodge a complaint within thirty days of the alleged discriminatory incident as required by federal regulations. See 29 C.F.R. § 1613.214(a)(1)(i) (1985). The associate director also told Peanick that "if you are able to achieve the minimum physical standards required for a Deputy U.S. Marshal and provide medical documentation to verify your fitness, the agency will consider sending you to the Training Academy to complete basic training." Supp. Joint App. at 8.

Peanick's charges eventually were referred to the EEO officer for the Marshals Service, who made initial contact with Peanick in May 1988. The EEO officer informed Peanick in June 1988 that the matter could not be resolved informally and that Peanick could file a formal complaint of discrimination with the Department of Justice. Peanick filed his complaint on June 30, 1988, alleging, inter alia, that his failure to graduate from the academy and his subsequent reassignment to detention officer were because of race and gender discrimination. The EEO officer recommended that the Department of Justice reject Peanick's complaint because most of his claims were time-barred since Peanick did not contact an EEO officer within the prescribed thirty-day time limit and his remaining claims were without merit. On June 27, 1989, the Department of Justice, following the recommendation of the EEO officer, issued an administrative decision denying Peanick's claims.

Peanick filed this action in federal court on May 23, 1989, alleging two theories of discrimination. First, Peanick claimed that his failure to graduate from the academy and his subsequent reassignment to detention officer were the result of race and gender discrimination (graduation and reassignment claims). He

contended that while he was not able to graduate from the academy and become a deputy marshal because he failed the 1.5 mile run, other recruits from different racial backgrounds with similar orthopedic injuries were allowed to graduate after substituting alternative forms of testing for the 1.5 mile run. Peanick also insisted that he has been denied promotions, achievement awards, equipment and uniforms, and overtime pay, and he has been subjected to harsher discipline because of his Native American heritage. Peanick alleged that he has been discriminated against on the basis of his gender while training at the academy because women recruits were given a longer time period to complete the mandatory 1.5 mile run. Second, Peanick claimed he was subject to further gender discrimination when the Marshals Service refused to grant him time to participate in the FIT program, which gives federal employees access to exercise equipment and affords a limited amount of work time for exercise (FIT program claim). Based on these two theories of alleged discrimination, Peanick sought an order reinstating him to the position of deputy marshal with back pay and benefits, as well as an order mandating his participation in the FIT program.

In lieu of an answer, the government filed a motion to dismiss and for summary judgment.[2] The government argued that Peanick's graduation and reassignment claims were untimely since Peanick did not contact an EEO officer within the thirty-day regulatory deadline. The government did not argue that the FIT program claim was untimely. The court ordered that the timeliness issue would be taken together with the case and decided after trial.

---

[2]As a result of the long and complicated procedural history surrounding this case, the government neglected to file an answer before trial. Neither party apparently noticed the lack of an answer and, after trial, the government, having discovered its omission, submitted a motion to file its answer out of time. The District Court granted the motion.

After a two-day bench trial, the court issued its first memorandum order on April 18, 1994.  The court first determined that the graduation and reassignment claims were timely filed.  The court reasoned that Peanick's failure to graduate from the academy and his subsequent reassignment to detention officer status amounted to continuing violations because (1) the Marshals Service told Peanick he could still become a deputy marshal if he satisfied the fitness requirements; (2) Peanick sought immediate "clarification and correction" of what he believed to be discriminatory treatment; and (3) additional discriminatory incidents stemmed from Peanick's classification as a detention officer.  Peanick v. Morris, No. 4:89CV981, slip op. at 12 (E.D. Mo. April 18, 1994) (Peanick I).  Even though the court deemed the action timely, it rejected on the merits Peanick's theory of race and gender discrimination as it relates to his graduation and reassignment claims.  With respect to Peanick's FIT program claim, the court found that the Marshals Service had discriminated against Peanick by denying him access to the program.  The court noted that while the program was available to mostly female administrative staff, Peanick "was often denied the right to participate" even though his detention officer status meant that he was an administrative employee.  Id. at 18.  The court concluded that the denial of access to the FIT program was based on Peanick's gender and awarded him $100 in damages.  In a subsequent memorandum order, the court awarded Peanick $500 in attorney fees.  Peanick v. Morris, No. 4:89CV981, slip op. at 14 (E.D. Mo. April 19, 1995) (Peanick II).

On appeal, Peanick does not challenge the District Court's determination that he did not suffer from any racial discrimination. Instead, Peanick appeals the court's holding of no gender discrimination as it relates to his failure to graduate from the academy and his subsequent reassignment as a detention officer.  He also insists that the court erred in failing to order that he be reinstated as a deputy marshal with full back pay and benefits.

Finally, Peanick challenges the court's decision to award $500 in attorney fees as insufficient.

## II.

We first address Peanick's claim of gender discrimination as it relates to his failure to graduate from the academy and his subsequent reassignment as a detention officer. Peanick maintains that the Marshals Service discriminated against him because the PEB standards required male recruits to complete the 1.5 mile run in a shorter time period than female recruits.[3] As noted above, after finding that this claim was timely filed, the District Court nevertheless went on to reject it on the merits. We review a district court's legal conclusions de novo and its factual findings for clear error. Long v. Nix, 86 F.3d 761, 765 (8th Cir. 1996). We conclude that the District Court was correct to reject this claim, although, unlike the District Court, we reject it on timeliness grounds and do not reach the merits of the claim. This Court may "affirm the district court's judgment on any grounds supported by the record." United States v. Lohman, 74 F.3d 863, 866 (8th Cir.), cert. denied, 116 S. Ct. 2549 (1996).

A federal government employee alleging discrimination under Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e to 2000e-17 (1988 & Supp. V 1993), must bring purported discriminatory acts to the attention of the federal agency's EEO officer within thirty days of the alleged incident. 29 C.F.R. § 1613.214(a)(1)(i) (1985). The thirty-day deadline functions as a statute of limitations and failure to meet it will result in dismissal of the

---

[3]Peanick's other claim of gender discrimination, denial of access to the FIT program, is entirely unrelated to his allegation that the PEB standards discriminate against men. The government has not cross-appealed the District Court's finding that Peanick was discriminated against with respect to the FIT program nor has Peanick appealed as insufficient his $100 award for this violation. The FIT program claim is thus not before us.

claim.  McAlister v. Secretary of Health and Human Servs., 900 F.2d 157, 158 (8th Cir. 1990).  The limitations period begins to run "the date on which the adverse employment action is communicated to the plaintiff." Dring v. McDonnell Douglas Corp., 58 F.3d 1323, 1328 (8th Cir. 1995). Peanick claims that the Marshals Service committed gender discrimination when it applied different PEB requirements to male recruits than to female recruits and reassigned him as a detention officer.  The PEB standards were applied to Peanick when he attended basic training at the academy in February 1985 and again in September 1985.  On January 21, 1986, the Marshals Service notified Peanick of his reassignment to detention officer. Consequently, the latest the thirty-day limitations period began to run was January 21, 1986--the date on which Peanick was told of the adverse employment action.  Peanick, however, waited more than two years before contacting an EEO officer about these alleged acts of gender discrimination, far beyond the thirty-day time limit.  Because Peanick failed to make a timely complaint, the gender discrimination claim regarding his failure to graduate and his subsequent reassignment to detention officer is barred.  See McAlister, 900 F.2d at 158.  We thus affirm the District Court with respect to this claim of gender discrimination--even though the court erred in concluding that the claim was timely filed as a continuing violation--because we reach the same result by a different method.

The District Court gave three reasons for why it found the actions of the Marshals Service to be continuing violations of Title VII.  See supra p. 6.  None of these reasons, however, provides a legitimate basis for finding a continuing violation of the gender discrimination claim as it relates to Peanick's failure to graduate from the academy and his subsequent reassignment to detention officer.  First, the court determined that Peanick's action was timely because the Marshals Service told Peanick that he could still become a deputy marshal if he successfully completed PEB testing, which, according to the District Court, meant that the

decision to reassign Peanick to detention officer "was not necessarily permanent and final, and that the Marshal Service wanted to work with plaintiff to improve his situation." Peanick I at 12. A mere promise to allow Peanick to reenter the deputy marshal program if he satisfied the PEB standards does not undermine the finality of the initial decision to reassign him as a detention officer. An unambiguous decision to reassign him was made on January 21, 1986, and that is when the limitations period began to run. See Dring, 58 F.3d at 1328. Peanick also cannot resort to some sort of equitable estoppel theory, arguing that the promise that he might be rehired as a deputy marshal induced him to sleep on his rights. Equitable estoppel is appropriate only when "the employee's failure to file in timely fashion is the consequence either of a deliberate design by the employer or of actions that the employer should unmistakably have understood would cause the employee to delay filing his charge." Kriegesmann v. Barry-Wehmiller Co., 739 F.2d 357, 358-59 (8th Cir.) (quoting Price v. Litton Business Sys., Inc., 694 F.2d 963, 965 (4th Cir. 1982)), cert. denied, 469 U.S. 1036 (1984). A contingent promise by the Marshals Service that Peanick might someday become a deputy marshal if he passed the PEB test, without more, does not warrant an equitable estoppel. Wilson v. Westinghouse Elec. Corp., 838 F.2d 286, 288 (8th Cir. 1988) (holding that attempts by supervisors to locate new position within company for plaintiff did not toll limitations period); Lawson v. Burlington Indus., Inc., 683 F.2d 862, 864 (4th Cir.) (holding that employee's expectation that he might be rehired did not toll limitations period), cert. denied, 459 U.S. 944 (1982).

Second, the court held that the action was timely because Peanick "immediately began seeking clarification and correction of what he perceived to be discriminatory treatment" by filing an appeal with the Merit Systems Protection Board. Peanick I at 12. Such a determination undercuts, rather than supports, a finding that the claim was timely. If in fact Peanick believed at the

outset that he had been discriminated against, he had no excuse for failing to contact an EEO officer within the thirty-day period instead of waiting more than two years.

Third, the court concluded that the action was timely because the subsequent discriminatory incidents Peanick suffered "are a continuation of his classification as a detention officer." Id. The District Court never specified what those subsequent discriminatory incidents were that resulted from Peanick's reassignment as a detention officer. Presumably, the subsequent discriminatory incidents referred to Peanick's allegedly being denied promotional opportunities, achievement awards, training, uniforms, and overtime pay. Those incidents, however, stem from Peanick's claim of race discrimination and in no way relate to his claim of gender discrimination. See Complaint at ¶ 7E. Peanick did not appeal the District Court's rejection of his race discrimination claim and thus that claim is not before us. We hold that the alleged discriminatory incidents in question do not support Peanick's continuing-violation theory.

In a last-ditch attempt to save his action, Peanick argues, in his reply brief, that the government has waived the timeliness defense because it did not cross-appeal on this issue. This argument is unconvincing. We are free to affirm on this ground even though the government has not cross-appealed it. See Auman v. United States, 67 F.3d 157, 161-62 (8th Cir. 1995) ("We review judgments, as opposed to opinions, and may affirm on any ground supported by the record, regardless of whether counsel urged that ground or the district court considered it.").[4]

---

[4]Peanick also argues that the District Court erred in failing to order as remedial relief his reinstatement to deputy marshal with full back pay and benefits. This argument "puts the cart before the horse" because it assumes that Peanick has already won on this count. We need not and do not address this argument since Peanick was not entitled to prevail on his claim of gender discrimination in the first place.

**III.**

Peanick's challenge to the $500 attorney fees award as insufficient must also fail.  A prevailing plaintiff in a Title VII action is entitled to recover costs, including reasonable attorney fees.  42 U.S.C. § 2000e-5(k) (Supp. V 1993).  We review a district court's award of attorney fees for an abuse of discretion.  Parton v. GTE North, Inc., 971 F.2d 150, 156 (8th Cir. 1992).  The relatively small award in this case simply reflects the fact that Peanick's case was largely unsuccessful.  The trial court rejected the very heart of his case:  the claims of racial discrimination as well as the claim of gender discrimination as it relates to the PEB standards and reassignment to detention officer status.  The only success Peanick enjoyed was with respect to his claim of gender discrimination in the FIT program, "a minor issue which received little attention" and resulted in a meager $100 award of damages.  Peanick II at 12.  The "most critical factor" in awarding attorney fees "is the degree of success obtained."  Hensley v. Eckerhart, 461 U.S. 424, 436 (1983).  Given Peanick's very limited success, it was not an abuse of discretion to award only $500 in attorney fees.

**IV.**

For the foregoing reasons, the judgment of the District Court is affirmed.

A true copy.

Attest:


CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

-11-