# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 02-3569/3570

_____

| | | |
|---|---|---|
| Jerry Wheeler, | * | |
| | * | |
| Plaintiff-Appellee/ | * | |
| Cross-Appellant, | * | |
| | * | |
| Jeanette Wheeler, | * | |
| | * | |
| Plaintiff, | * | |
| | * | Appeals from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Missouri. |
| Missouri Highway & Transportation | * | |
| Commission, also known as Missouri | * | |
| Department of Transportation, | * | |
| | * | |
| Defendant-Appellant/ | * | |
| Cross-Appellee. | * | |

_____

Submitted: September 8, 2003

Filed: October 31, 2003

_____

Before SMITH, LAY, and BRIGHT, Circuit Judges.

_____

LAY, Circuit Judge.

Jerry Wheeler brought this "reverse discrimination" case asserting that the Missouri Highway and Transportation Commission ("MHTC") hired a female employee rather than Wheeler for a permanent crew worker position. The jury found that Wheeler had been discriminated against, but denied damages on the ground that Wheeler, in any event, would not have received the promotion. MHTC appeals the district court's order denying its post-trial motions for judgment as a matter of law and for a new trial. Wheeler, in a cross-appeal, argues that the district court abused its discretion by: 1) restricting the theory of Wheeler's case and the types of evidence allowed; 2) denying Wheeler's motions to amend his pleadings to include injunctive and declaratory relief; and 3) reducing Wheeler's attorney fee request. We affirm.

## I. BACKGROUND

MHTC is an agency of the State of Missouri responsible for the maintenance and care of the state's highway system. The Missouri Department of Transportation ("MoDot") is an organization operating under the control of MHTC that carries out the construction and maintenance of state roadways. Jerry Wheeler was employed by MoDot as a seasonal/temporary maintenance worker in 1995 and 1997. In May 1998, Wheeler applied for a permanent crew-worker position. Wheeler and nine other candidates were interviewed. One of the female candidates, Terri Williams, was hired.

MHTC states that the candidates were asked the same questions and that the hiring decision was based on the experience and background of the applicants together with the interview. Williams did very well in her interview, MHTC asserts, whereas Wheeler was upset and agitated and raised his voice to the interviewers, indicating that he was going to be very upset if a female were hired for the job. One of the interviewers, Scott Stone, testified that Wheeler's behavior reminded Stone of

an incident in 1997 when Wheeler exhibited similar angry and confrontational behavior.

Wheeler alleges that Williams was much less qualified than he was. He asserts that Williams was specially sought out to fill the position, and that MoDot did not follow standard employment procedures in hiring Williams. Wheeler contends that the hiring was discriminatory because it was based on gender and not on the merits of the candidates.

On June 15, 1999, Wheeler filed a Title VII gender discrimination claim against MHTC. Wheeler's claim was tried before a jury which found that the hiring decision was motivated by gender and therefore discriminatory. They also found, however, that MHTC would not have hired Wheeler even if there had been no discrimination. Thus, Wheeler was awarded no actual damages.

Both parties made post-trial motions. MHTC brought motions for judgment as a matter of law and for a new trial. Wheeler brought motions: 1) to alter or amend the judgment pursuant to Fed. R. Civ. P. 59(e); 2) for a new trial; 3) for sanctions and relief from judgment pursuant to Fed. R. Civ. P. 60; and 4) for attorney fees. All post-trial motions were denied except Wheeler's motion for attorney fees, which the district court reduced to $21,250.[1]

## II. MHTC's APPEAL

MHTC appeals on two grounds. First, MHTC argues that the district court erred in denying its motion for judgment as a matter of law because there was insufficient evidence to support the jury's verdict that MHTC's decision not to hire Wheeler was discriminatory. Second, MHTC appeals the district court's refusal to

---

[1]Wheeler sought attorney fees totaling $253,658.

grant a new trial. It argues that the district court abused its discretion in allowing Wheeler to admit evidence of MHTC's affirmative action plan ("AAP"), given that there was insufficient evidence in the record that MHTC acted pursuant to the plan.

## A. Sufficiency of the Evidence

We review the denial of a motion for judgment as a matter of law *de novo*, using the same standard as the district court. Ogden v. Wax Works, Inc., 214 F.3d 999, 1005 (8th Cir. 2002). We consider the evidence in the light most favorable to the non-moving party, resolving all conflicts in the evidence in Wheeler's favor and assuming as proved all facts that his evidence tended to show. In addition, we must give the non-moving party the benefit of all favorable inferences that may be reasonably drawn from the facts proved. Hathaway v. Runyon, 132 F.3d 1214, 1220 (8th Cir. 1997).

MHTC asserts that the only evidence of discrimination at trial was its affirmative action plan. MHTC argues that it cannot be held liable for discrimination by acting pursuant to a valid AAP. See Christensen v. Equitable Life Assurance Soc'y, 767 F.2d 340, 343 (7th Cir. 1985) (noting that "a lawful affirmative action program is not evidence of discrimination"), cert. denied, 474 U.S. 1102 (1986).

We find MHTC's assertion to be unconvincing. In numerous discussions both before and during the trial, the district court stated that the issue was not the existence and validity of the AAP, but the relative merits and qualifications of the two individuals. As the district court noted, MHTC agreed with this theory of the case and chose to defend the case on the merits of the hiring decision, "without reference or refuge to an affirmative action plan." Accordingly, the district court granted MHTC's motion *in limine* to exclude evidence of the AAP. The only evidence of the AAP the district court allowed was Wheeler's inquiry on cross-examination as to whether the AAP played any role in the interviewer's hiring decision.

MHTC seems to equate Wheeler's evidence of pressure from upper level management to hire females as evidence of the AAP. This is inaccurate. Evidence of illegal and discriminatory motive to hire on the basis of sex and not on the merits of the candidates is distinct from evidence of a valid AAP. The basis of Wheeler's argument was not that MHTC acted pursuant to the AAP, which he conceded was valid, but that there was pressure from upper management to hire females in violation of the AAP's commitment to equal employment opportunity standards, which led to the discriminatory hiring.

Wheeler supported this theory of the case with evidence independent of the AAP, including: 1) testimony of one of the interviewers that Wheeler's qualifications were much better than Williams, that normal interview procedures were not followed, and that, in his opinion, equal employment opportunity procedures were not followed; 2) testimony of two of the three interviewers that they felt pressure to recommend the female employee because she was female, despite the fact that they felt Wheeler had better qualifications; 3) testimony of Wheeler's supervisor that he told Wheeler that he would be lucky to get the job because it was widely known that "they were going to hire a lady;" 4) testimony that Williams was especially sought out for the position; and 5) evidence that Wheeler was more experienced and skilled for the position than Williams. We find that this evidence was sufficient to support the jury's verdict of discrimination.

## B. New Trial

Based on the foregoing discussion, we also find that the district court did not abuse its discretion in refusing to grant MHTC a new trial. While MHTC asserts that the district court erroneously admitted evidence of the AAP, even assuming it was admitted erroneously, the evidence was not so prejudicial that a new trial would produce a different result. See Bevan v. Honeywell, Inc., 118 F.3d 603, 612 (8th Cir. 1997). ("A new trial is not warranted on the basis of an evidentiary ruling unless the

evidence was so prejudicial that a new trial would likely produce a different result."). Wheeler offered evidence, independent of the AAP, sufficient to support the jury's verdict of discrimination.

## III. WHEELER'S CROSS-APPEAL

Wheeler argues on appeal that the district court abused its discretion by dictating the theory of Wheeler's case and wrongfully excluding evidence that Wheeler needed to prove his case. Wheeler also argues that the district court abused it discretion in denying Wheeler's motions to amend his pleadings to include declaratory and injunctive relief, and in calculating his attorney fee award.

### A. Dictation of the Case and Evidence Allowed

Wheeler cites in a rambling brief, which is difficult to understand, a great number of instances in which he believes the district court abused its discretion by excluding evidence and dictating the theory of his case. For purposes of our analysis, these alleged abuses may be divided into two categories: 1) those "abuses" relating to the discrimination phase of the case, and 2) those relating to the "same decision" verdict.

### 1. Excluded Evidence and "Abuses" Relating to Discrimination

There is no reason to discuss Wheeler's numerous allegations of erroneously excluded evidence and unfair adverse rulings regarding discrimination for the simple reason that Wheeler prevailed on that issue. The jury, in fact, found discrimination. Therefore, even if meritorious, Wheeler's allegations of abuse of discretion would not warrant a new trial because the admission of additional evidence or other rulings in Wheeler's favor would not change the outcome on this issue. See Mems v. City of St. Paul, Dep't of Fire and Safety Servs., 327 F.3d 771, 779 (8th Cir. 2003)

("Ultimately, Appellants must show two things to gain relief from a faulty evidentiary ruling: (1) that the district court abused its discretion, and (2) that the evidentiary ruling was prejudicial to the point of producing a different verdict.").

We are not persuaded by Wheeler's argument that additional evidence regarding discrimination would have also influenced the jury's "same decision" finding. Additional evidence regarding discrimination could not have influenced the "same decision" verdict, because the relevant inquiry for the jury on that issue is whether, *in the absence of discrimination*, Wheeler would or would not have been hired.[2]

---

[2]Jury Instruction 6 charged the jury as follows:

> Your verdict must be for plaintiff, Jerry Wheeler, and against defendant, Missouri Highways [sic] and Transportation Commission, on plaintiff's gender discrimination claim if all the following elements have been proved by the greater weight of the evidence.
>
> First, defendant failed to hire plaintiff; and
>
> Second, plaintiff's gender was a motivating factor in defendant's decisions.
>
> If either of the above elements has not been proved by the greater weight of the evidence, your verdict must be for defendant and *you need not proceed further in considering this claim.*

Jury Instruction No. 7 directed:

> *If you find in favor of plaintiff under Instruction No. 6, then you must answer the following question on the verdict form:* Has it been proved, by the greater weight of the evidence, that defendant wouldn't have hired plaintiff regardless of his gender?

## 2. Excluded Evidence Relating to the "Same Decision"

MHTC can avoid liability, even where a jury finds that there was discrimination, by showing that it would have made the same decision without discrimination. See, e.g., Ross v. Douglas County, Nebraska, 234 F.3d 391, 397 (8th Cir. 2000) ("[O]nce plaintiff introduces direct evidence of discrimination, the burden shifts to the employer to show, by a preponderance of the evidence, 'that it would have made the same decision even if it had not taken the plaintiff's [gender] into account.'") (quoting Price Waterhouse v. Hopkins, 490 U.S. 228, 258 (1989)). In the instant case, the jury found that even without discrimination, MHTC would not have hired Wheeler. Wheeler argues that this verdict was based substantially on two erroneous evidentiary rulings: 1) MHTC was unfairly allowed to bring up, and Wheeler was prevented from rebutting, "ranking evidence" of applicants other than Wheeler and Williams; and 2) the district court wrongfully excluded Wheeler's rebuttal testimony of MHTC's sole witness, Scott Stone, as hearsay.

### a. Ranking Evidence

The district court consistently instructed the parties to focus on Williams and Wheeler, and not the other applicants. The primary issue was to be whether Williams or Wheeler was more qualified. Consistent with this theory of the case, the district court granted MHTC's motion *in limine* prohibiting Wheeler from introducing any evidence concerning the qualifications of other applicants, thereby limiting the proof as to the other applicants in order to prevent the jury from hearing evidence that was not relevant. Wheeler argues that the district court abused its discretion by admitting testimony in violation of its previous order without allowing Wheeler to address the issue on rebuttal or correct the matter in a jury instruction.[3]

---

[3]Wheeler refers to the following exchange that occurred during MHTC's examination of one of the interviewers, Ron Barton:

Q [by Grace-Beasley, MHTC's attorney]: Now at some point after all the interviews were concluded . . . Mr. Stone asked you to rank who you thought should get the position?

A: Yes.

Q: Okay. And I am not asking you about anyone else - - just about, let's say, Mr. Wheeler - - let me ask you this: What specific instructions did he give you, as far as ranking who he thought should get the position?

Mr. Douglas [Wheeler's Attorney]: Your Honor, I want to make an objection. Could we approach . . . ? (Whereupon the following sidebar conference took place:)

Mr. Douglas: This was very specifically ordered by the Court that we weren't going to get into this ranking situation with respect to anyone; and that all we were talking about was Mr. Wheeler and Mrs. Williams.

The Court: She just said not to mention anybody else's name.
. . . .

The Court: You asked him if he ranked Wheeler above Williams.

Mr. Douglas: No. All I asked he said [sic] that Wheeler was better than Williams.
. . . .

Ms. Grace-Beasley: Yes. And my question was very specific. I am not asking who he ranked number one. I am asking about Wheeler, and I am asking about Williams.

The Court: If she compares and contrasts Wheeler and Williams, that's what you were doing.

Mr. Douglas: I don't have a problem with that.

Wheeler argues that this testimony violated the district court's *in limine* ruling and created a "pregnant negative" that there was someone ranked above Wheeler. Wheeler contends that this testimony contributed substantially to the jury's same decision verdict, as evidenced by the jury's question on this issue to the court during its deliberations.[4]

_____

. . . .

(Whereupon, the sidebar conference concluded.)

Q: Can you tell me what Mr. Stone's instructions were with respect to ranking the candidates?

A: Yes. He asked [another interviewer] and myself to write down on a piece of paper and give to him the top three as we saw them.

Q: And how did you rank Mr. Wheeler? Did you give him a number?

A: Yes.

Q: How did you rank Mr. Wheeler?

A: Number two.

Q: Okay. And how did you rank Mrs. Williams?

A: Number three.

Mr. Douglas: Your Honor, I have an objection.

(Trial Tr., Vol. II at 376-80).

[4]During deliberations, the jury submitted the following question to the district court:

-10-

MHTC argues that there was no abuse of discretion for three reasons. First, Wheeler was the first to bring up evidence of "ranking" by asking whether Barton recommended Wheeler as better qualified than Williams. Second, the testimony did not violate the district court's *in limine* order because MHTC asked Barton only about Wheeler and Williams. Third, the "ranking" evidence did not play a significant part in the "same decision" determination by the jury, because of the evidence of Wheeler's bad demeanor during the interview was sufficient to support the jury's verdict.

At the hearing on the post-trial motions, the district court went into great detail with counsel as to why he felt there was no prejudicial error in his rulings. The district court found that the jury's findings on the "same decision" instruction were consistent with the Defendant's theory of the case.[5]

---

> Please clarify what is considered as "admissable" [sic] discussion regarding the statements made that there was a "first" choice candidate refered [sic] by Mr. Barton and Mr. Smith. i.e. Can we discuss the existence of a candidate over both Mr. Wheeler and Ms. [sic] Williams?

The district court responded:

> You are to be guided by the evidence as presented and the instructions on the law as given to you.

(Gen. App. at 590).

[5]In explaining its basis for its ruling, we deem it significant that the district court said as follows:

> I never ruled before the trial that ranking was not an issue in the case.
>
> The ruling that I was requested to consider and the ruling that I made was that we were not going to get into mini trials of extraneous

-11-

people in the process.

There was an allegation that the Highway Commission hired a female instead of Mr. Wheeler, and I wanted to keep the focus on that hiring decision, and not to digress into qualifications of other people who were not Mr. Wheeler, who may or may not have been hired because of the hiring decision made by the Highway Commission.
. . . .
I never said you couldn't rank anybody, or how are we going to get there.

But I didn't want to then have a discussion about, "Well, so and so applied, and, look, they had these qualifications," . . . .

Now, all that being said, it was the plaintiff who for the first time asked about the ranking of candidates in the examination of Mr. Barton when he specifically asked the ranking questions, juxtaposing Mr. Wheeler to the person who was hired, opening the door on cross-examination to being more specific.

So this preoccupation that somehow the defendant should be sanctioned for ranking the applicants is misplaced, because what I ruled was we weren't going to go into the qualifications of the people who were not critical to this case.

And when this issue was first raised, it was raised by the plaintiff.
. . . .
Having asked Mr. Barton to rank Mr. Wheeler and the person who was hired was perfectly proper cross-examination to ask then where Mr. Wheeler ranked overall for the job.

And I don't find that logically inconsistent.

It's highly probative and appropriate, given the way the evidence was presented.  And consistent with the Court's pretrial rulings.

-12-

Based upon the district court's explanation and the fact that Wheeler's counsel was given an opportunity to go further and to offer rebuttal evidence to show that Wheeler was more qualified than Mr. Watson, who was ranked number one, we find the district court committed no error.

*b. Wheeler's Excluded "Hearsay" Testimony*

Wheeler also argues that he should be granted a new trial on the basis that the district court wrongfully excluded Wheeler's rebuttal of the testimony of Scott Stone, an interviewer. Stone testified that Wheeler raised his voice in the 1998 interview, and that this reminded him of a similar incident in a 1997 meeting where Wheeler, as a temporary employee, had also raised his voice. Wheeler wished to take the stand in rebuttal to testify that, in 1997, Mr. Stone had mistaken Wheeler for someone else and that "there was another gentleman who made a sarcastic remark that Mr. Stone got mad about." However, during a sidebar conference before Wheeler took the stand, MHTC's attorney objected to this anticipated testimony on the grounds of

---

The other thing I did do -- and I've gone back and looked, because I thought about it at the time -- was I also made it clear to the plaintiff that if it was believed that the ranking issue raised the specter of issues relative to qualifications, that rebuttal testimony could be presented, after consultation with the Court as to the nature and scope, that would permit further development of those issues, if the plaintiff so choose. . . .

No latitude in rebuttal was requested.

(Tr. of Hr'g on Post-Trial Mots. at 15-19).

hearsay. The district court agreed, allowing Wheeler to testify about the meeting, but not about the other gentleman's sarcastic remark.

Wheeler's proposed rebuttal testimony regarding the "other gentleman's sarcastic remark" was not hearsay. "Out-of-court statements constitute hearsay only when offered in evidence to prove the truth of the matter asserted." Anderson v. United States, 417 U.S. 211, 219 (1974); Fed. R. Evid. 801(c). Evidence of the sarcastic remark, even if Wheeler could have remembered the content of the remark (which he could not), was not offered to prove the truth of that remark, but only to show that Stone was mistaken about who had raised his voice in the 1997 meeting.

As previously noted, however, "[a] new trial is not warranted on the basis of an evidentiary ruling unless the evidence was so prejudicial that a new trial would likely produce a different result." Bevan, 118 F.3d at 612. Wheeler was not prohibited from testifying about the 1997 meeting or from denying Stone's assertion that Wheeler had appeared angry at this meeting. We believe that this afforded Wheeler a sufficient opportunity to rebut Stone's testimony and that being prevented from testifying about the substance of the sarcastic remark is not reversible error.

**B. Amending the Complaint for Declaratory and Injunctive Relief**

Both pre-trial and post-trial, Wheeler moved to amend his complaint to add appropriate injunctive relief. Post-trial, Wheeler also moved to include a prayer for declaratory relief. The district court denied these motions.

We review the district court's denial of leave to amend a complaint for an abuse of discretion. Mouser v. Caterpillar, Inc., 336 F.3d 656, 666 (8th Cir. 2003). The Federal Rules of Civil Procedure contemplate that "amendments to pleadings should be allowed with liberality where necessary to bring about the furtherance of justice and where the adverse party will not be prejudiced." Corsica Livestock Sales,

Inc. v. Sumitomo Bank, 726 F.2d 374, 377 (8th Cir. 1983). However, "the decision to allow or deny an amendment is a discretionary matter for the district court to resolve." McLaurin v. Prater, 30 F.3d 982, 985 (8th Cir. 1994).

We find no abuse of discretion in the district court's denial of Wheeler's motion to amend the complaint. Wheeler makes little argument that the district court abused its discretion other than to state that such relief "would [have been] appropriate" and that the district court "fail[ed] to explain a reason to not grant the relief." This is not accurate. The district court did, in fact, explain that the requested amendment was "untimely filed and unduly prejudicial, and not supported by the evidence at trial and the applicable case law." Since Wheeler points to no abuse of discretion by the district court, and we find none, we affirm on this issue.

## C. Attorney Fees

Wheeler argues that the district court abused its discretion in determining its award of attorney fees by: 1) crediting only 510 (from 1,664.62) hours worked by Wheeler's attorney on the case; 2) reducing counsel's hourly rate from $150 to $125; and 3) reducing counsel's fee award based on his limited success.

We review a district court's award of attorney fees for an abuse of discretion. Peanick v. Morris, 96 F.3d 316, 323 (8th Cir. 1996). The method for determining attorney fees is well established. "The starting point in determining attorney fees is the lodestar, which is calculated by multiplying the number of hours reasonably expended by the reasonable hourly rates." Fish v. St. Cloud State Univ., 295 F.3d 849, 851 (8th Cir. 2002) (citing Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)). The district court should exclude hours that were not reasonably expended. Hensley, 461 U.S. at 434. The onus is on the party seeking the award to provide evidence of the hours worked and the rate claimed. Id. at 433. Finally, the district court should

adjust the fee upward or downward on the basis of the results obtained.  Id. at 434; see also Fish, 295 F.3d at 852.

Regarding the number of hours Wheeler's attorney spent on the case, the district court appears to have considered the time and labor required and the novelty and difficulty of the issues and reduced the hours accordingly.  Hensley, 461 U.S. at 430; see also Williams v. Trans World Airlines, Inc., 660 F.2d 1267, 1273-74 (8th Cir. 1981).  The district court found that counsel had taken some thirty-seven depositions, many of which were not warranted.

Likewise, the district court did not abuse its discretion in reducing the hourly fee.  The burden is on the moving party to provide evidence supporting the rate claimed. Hensley, 461 U.S. at 433.  Here, Wheeler provided no evidence that the $150 per hour rate was the prevailing rate or otherwise reasonable.  Furthermore, the $150 per hour figure seems suspect, given that earlier in the proceedings Wheeler's attorney had represented his rate to be $125 per hour.

Finally, the district court did not abuse its discretion in reducing Wheeler's attorney fee based on his degree of success.  In awarding attorney fees, "the most critical factor is the degree of success obtained." Id. at 436.  Here, as the district court explained, the reduction correctly reflected the "same decision" verdict.

The appeal and cross-appeal are both denied.  The judgment of the district court is AFFIRMED.

_____